WILLIAM OTTO, Appellant, v. INDEPENDENT SCHOOL DISTRICT OF MADRID et al., Appellees.

No. 46834.

JULY 29, 1946.

REHEARING DENIED SEPTEMBER 23, 1946.

C. G. Lee, of Ames, and T. J. Mahoney, of Boone, for appellant.

Miller, Huebner & Miller, of Des Moines, for appellees.

SMITH, J.—Claimant, a school janitor, slipped and fell on an icy sidewalk while going to work. The deputy commissioner, sitting as a board of arbitration, denied his claim for compensation, holding that his resultant injury did not arise "out of and in the course of his employment." On review this decision was affirmed by the commissioner and the latter's findings and order were in turn affirmed by the district court.

Claimant asserts: (1) That since the facts were undisputed, the question of compensability was one of law; and (2) that the undisputed facts show his injury arose out of and in the course of his employment. For the purpose of this appeal we assume, without deciding, that the record is such as to present a question of law. But see Davis v. Bjorenson, 229 Iowa 7, 293 N. W. 829. That leaves only proposition (2) for consideration.

It is not necessary to recite the facts in great detail. Claimant's duties as janitor were the usual ones required of janitors of public buildings: sweeping floors, washing windows, replacing fuses. and light bulbs, making minor repairs to the heating plant and other equipment; in the summer repairing floors, painting, etc., in preparing the building for opening of school in the fall; and in winter, firing boilers, shoveling snow, and, when sidewalks were icy, spreading ashes or salt upon them. He locked the building at night and ordinarily unlocked it in the morning.

There had in past years been a written contract of employment which provided that during winter months the building temperature be up to seventy degrees by nine o'clock, when school opened. This requirement was still adhered to after the written contract expired.

Claimant had no specified working hours but had learned by experience how early it was necessary to go to work in order to perform his duties. On March 13, 1944, the side-

walks were covered with ice when he arose at five o'clock a. m., which was his usual and customary time. On his wife's insistence he put a pair of old socks on over his rubbers. He lived approximately five blocks from the schoolhouse. On his way to work he slipped and fell and suffered the injury complained of.

He was a long-time, faithful employee, and required little if any supervision, as he knew what his duties were. At times the superintendent would have him do something and he was subject to the direction of the directors. A few times during his twelve years of employment he had been called upon to perform some service outside of customary hours. However, at the time of his injury he was not responding to any such call and had done nothing at home that morning in connection with his employment. When injured he was on his way to his place of employment at his usual time and in his customary manner.

I. Section 85.3, Iowa Code, 1946 (section 1363, Iowa Code, 1939) makes compensable "all personal injuries sustained by an employee arising out of and in the course of his employment." Code, 1946, section 85.61 (section 1421(6), Code, 1939) defines these words to include "injuries to employees whose services are being performed on, in, or about the premises * * * *and also injuries to those who are engaged elsewhere in places where their employer's business requires their presence and subjects them to dangers incident to the business.*"

The words we have italicized above prescribe the only conditions under which injuries suffered en route to and from (but not on) the premises are compensable. Unless it can be fairly said the employee, while going to or from his regular place of work, is engaged in a place where his employer's business requires his presence, his injury en route is not compensable. It does not arise out of and in the course of his employment.

There is, of course, a difference between "arising out of" and "arising in the course of" employment and both must be established to warrant allowance of compensation. Christensen v. Hauff Bros., 193 Iowa 1084, 188 N. W. 851; Kyle

v. Greene High School, 208 Iowa 1037, 226 N. W. 71. Text writers and courts are in substantial agreement that "arising out of" implies some causal relation between the employment and the injury; and that "arising in the course of" means arising during the period of employment and at a place where the employee may be performing the duties of his employment or doing something incident thereto. See 71 C. J. 647, 659, sections 397, 404; 28 R. C. L. 797, section 89; Bushing v. Iowa Railway & Light Co., 208 Iowa 1010, 1018, 1019, 226 N. W. 719.

A case involving an injury from a "street accident" suffered while en route to or from work therefore requires a determination whether the employee was engaged in his employer's business at the time and whether there was causal relation between the injury and such employment. If the first condition be found not to exist it becomes unnecessary to consider the second.

II. The general rule is conceded to be that the course of employment commences after the employee reaches the premises where his actual work begins and is carried on and ceases when he leaves. In stating this general rule, the opinion in Kyle v. Greene High School, supra, 208 Iowa at page 1040, 226 N. W. at page 72, seems to confuse the two requisites to compensability ("arising out of" and "arising in the course of") but the later discussion shows that the court was really considering whether the injury en route arose *in the course of the workman's employment.* No question seems to have been raised as to whether there was any causal relation between the injury and the employment.

The opinion is clear in its statement of the exceptions to the general rule, viz., that the injury is compensable (as arising out of and in the course of employment) if the employee, when injured, "is on his way home after performing, or on the way from his home to perform, *some special service or errand,* or some duty incidental to the nature of his employment in the interest of, or under the direction of, his employer." (Italics supplied.)

It is significant that every case therein cited to illustrate

the exceptions involved an injury suffered either while the employee was on a special mission apart from his regular employment: State Compensation Ins. Fund v. Industrial Acc. Comm., 89 Cal. App. 197, 264 P. 514; Stockley v. School District, 231 Mich. 523, 204 N. W. 715; Sun Indemnity Co. v. Industrial Acc. Comm., 76 Cal. App. 165, 243 P. 892; Palmer v. Main, 209 Ky. 226, 272 S. W. 736; City of Fremont v. Lea, 115 Neb. 565, 213 N. W. 820; or was engaged in regular work that had no particular situs but required him to travel from place to place: Katz v. Kadans & Co., 232 N. Y. 420, 134 N. E. 330, 23 A. L. R. 401; Reese v. National Sur. Co., 162 Minn. 493, 203 N. W. 442; Chandler v. Industrial Comm., 55 Utah 213, 184 P. 1020, 8 A. L. R. 930.

In the Kyle case itself the decision is based squarely on the fact that the employee was going to the schoolhouse on a special service or errand incidental to, but outside the regular duties of, his employment. 208 Iowa at page 1041 et seq., 226 N. W. at page 73 et seq.

That is not the situation here. Claimant was, when injured, en route from his home to the schoolhouse to commence the performance of his regular duties. He left home at the usual hour and was traversing the regular route of his own selection. He had done nothing that morning in connection with his employment. His work had not commenced.

Three Iowa cases are cited to the proposition that where the employee is engaged in furthering the employer's business he is within the protection of the Workmen's Compensation Law. In none of them was he injured while going to or from the situs of his regular work. They are cases in which the peculiar nature of the employment required the employee to do the thing he was doing at the particular time and place. See Fintzel v. Stoddard Tractor & Equip. Co., 219 Iowa 1263, 260 N. W. 725; Danico v. Davenport Chamber of Commerce, 232 Iowa 318, 5 N. W. 2d 619; Linderman v. Cownie Furs, 234 Iowa 708, 13 N. W. 2d 677. They are not in point here.

In apparent recognition of the difficulty of bringing appellant's case within any hitherto announced exception to the well-established "going and coming" rule it is argued that these facts are sufficient:

"* * * that it was the duty of appellant to go to the school at about 5:00 A. M. in order to get the school plant ready for the day, that on icy days he had to render the special service of spreading ashes, cinders, or salt on the school walk, that he had no discretion about going, that on the morning of the accident traveling conditions were hazardous and that the injury resulted from such hazardous traveling conditions, constituted a special instance taking appellant's case out of the general rule of non-compensability for injuries sustained in going from home to the usual place of work."

Some of these circumstances would be pertinent to show causal connection between the employment and the injury *if it were established that the injury arose "in the course of the employment."* But none of them tends, in the slightest degree, to establish the latter requisite.

Four cases from other jurisdictions are cited as announcing exceptions to the general rule justifying appellant's claim here. Gelbart v. New Jersey Federated Egg Producers' Assn., 17 N. J. Misc. 185, 7 A. 2d 636, perhaps goes further than any of the others but it still falls short. The employee, Gelbart, had a key to his employer's egg-grading station and it was his duty to open the business in the morning at the regular hour (between six and seven) and at other times on call. Other employees came to work at nine a. m. A manager had the only other key but usually arrived later in the day.

On the morning in question Gelbart inadvertently left his key at home and had to go back for it. A trucker who did some work for the employer picked him up on his way back home and after he procured the key they started toward the grading station. On this return trip the employee was killed in a traffic accident.

Whatever we may think of the soundness of the decision, the case is not analogous to appellant's case here. The employee was making a special trip when the accident occurred. That it was one made necessary by his own forgetfulness seems not to have mattered in the decision.

Kromley v. Board of Education, 13 N. J. Misc. 627, 180 A. 546, involved an injury suffered by a school janitor while

going after his keys to make a voluntary emergency evening trip to the schoolhouse to check his fires because the night was extremely cold. Though voluntarily made, the trip was special and outside his regular duties. The decision falls within the rule of our own Kyle case, supra.

Cymbor v. Binder Coal Co., 285 Pa. 440, 132 A. 363, cited by appellant, was a case in which the employee was hired and paid extra wages to perform the special duty of returning to his employer's mine in the night to turn on the pumps so the water would be removed in time for regular operations to resume in the morning. The opinion points out in effect that the principal part of the special trips was the journey back and forth and held such journeys were a part of and in the course of his employment.

In Lang v. Board of Education,      S. D.      , 17 N. W. 2d 695, claimant was superintendent of the defendant school district. His duties were executive. He had no fixed hours and performed his duties when and *where* the occasion required. His employment had no exclusive situs. He performed some at home and had done so just previous to his injury en route to the schoolhouse.

There is no logical analogy between that case and this. Claimant here had no duties to perform, and had been performing none, away from the school premises. It was only true to a limited extent that he could select his own regular hours of work. Practically, the circumstances fixed the hours.

Davis v. Bjorenson, supra, 229 Iowa 7, 293 N. W. 829, and Marley v. Johnson & Co., 215 Iowa 151, 244 N. W. 833, 85 A. L. R. 969, are cited by appellant but they involve facts and principles (not involved in, and not at all similar to, those here) which showed the employment had actually commenced when the injury occurred.

Appellant's contention seems based on the proposition that if a workman's employment is such that he *may* be required to perform occasional special service which *includes* travel to and from the employer's premises, his regular trips are therefore a part of, and in the course of, his employment. We cannot sustain this contention. An employee who is paid a

fixed salary not based on the number of working hours and who may be called on at any time for special service, but whose regular employment has a definite situs, is not necessarily "in the course of his employment" at all times.

Such an employee, when going to or returning from his *regular* work, is in exactly the same legal position as the day laborer who figuratively or literally punches a time clock. Whether either is to be held to be "in the course of his employment" must be left to future legislative definition. We cannot read it into the present statute.

In Nehring v. Minnesota Mining & Mfg. Co., 193 Minn. 169, 171, 258 N. W. 307, 308, that court draws the distinction applicable here. The employee in that case was regularly employed as a master electrician in his employer's factory. He worked regular hours in the factory but was on occasion required to make emergency repairs, necessitating extra trips. He was killed on one of these emergency trips while returning home after performing the necessary repair work.

His widow was allowed compensation but upon the express ground that his injury occurred while returning from the special mission. The court says:

"* * * had this accident occurred when Nehring, after finishing his regular day's work in the factory, was on his way to his home * * * his death would not be compensable, for it would not have been caused by an accident arising out of and in the course of his employment."

Clark v. Industrial Commission of Ohio, 55 Ohio App. 428, 430, 9 N. E. 2d 924, 925, seems exactly in point here. Claimant was a courthouse janitor. His contract of employment required him to "be on duty twenty-four hours each day" on a monthly salary. He was required to take care of the furnace in winter and to keep the building properly heated.

One night he left the fires banked and went home. The next morning he started to work about four o'clock and on his way to the courthouse fell from his bicycle and suffered injury. The industrial commission and the Court of Common Pleas having denied him compensation he appealed to the Court of Appeals. That court affirmed, on the authority of

Industrial Commission' v. Heil, 123 Ohio St. 604, 176 N. E. 458, saying:

"The mere fact that Clark had in his pocket the keys to the court house, could not alter the nature or purpose of his employment. As said in the Heil case, he could not possibly do any of the things he was employed to do until he reached the court house."

And in the Heil case, 123 Ohio St. at page 607, 176 N. E. at page 459, the Ohio Supreme Court says:

"We are quite unable to see any substantial merit in the proposition that an employee whose duties have a fixed situs can be in the discharge of those duties when he is a mile away, traveling upon a public highway for the purpose of reaching his place of employment."

Heil was the manager of his employer's plant but had no duties to perform until he reached it.

We cannot conclude that claimant here was performing any duty incident to his employment when going to work in the morning any more than if he had been a day laborer whose working hours were fixed by contract. The *situs* of his work was fixed and he could do nothing until he arrived there. Assuming that he might on occasion be required to perform some special service or errand requiring his presence on the street for its performance, that was not his situation when he suffered this injury.

No case is cited that goes as far as we are asked here to go. We favor a liberal construction of the statute in the interest of the workman but we must keep within the limits fixed by the legislature. The statute cannot be enlarged by interpretation beyond its plain intendment. The Workmen's Compensation Law was not designed to establish a system of health or accident insurance.

Though it be conceded that the commissioner's decision is subject to review, his conclusion and that of his deputy and of the experienced trial court are entitled to more than casual consideration. We are convinced their decision is in accord with the intention of the statute and should be affirmed.

1000

■ The members of the court participating in consideration of the case being equally divided, the decision below is, by operation of law, affirmed.—Affirmed.

HALE, MANTZ, and WENNERSTRUM, JJ., concur.

MULRONEY, J., and GARFIELD, C. J., and BLISS and OLIVER, JJ., dissent.

MILLER, J., takes no part.

MULRONEY, J. (dissenting)—My disagreement with the majority opinion is that the result is reached by the application of a rule or formula rather than a liberal application of the law to the special facts of this case. It is the theme of the majority opinion that there is a general rule called the "going and coming" rule which states that a workman is not in the course of his employment until he reaches the premises where his actual work begins and he is not in the course of his employment when he leaves such premises to go home. The opinion recognizes that there are certain "well established" exceptions to this general rule and it is the majority view that the court's duty is to fit the facts to one or more of the so-called exceptions and, if the facts fit, the workman was in the course of his employment while going to or from his work. If they do not fit, then he was not in the course of his employment.

The exception discussed by the trial court and in the majority opinion is the "special errand" exception and the majority hold, since the facts do not show Otto was on a "special errand," then the general rule of nonliability applies. I do not think it is as simple as that. As Justice Sutherland said, in Cudahy Packing Co. v. Parramore, 263 U. S. 418, 424, 44 S. Ct. 153, 154, 68 L. Ed. 366, 369, 30 A. L. R. 532, 536:

"No exact formula can be laid down which will automatically solve every case."

See, also, Spencer v. Chesapeake Paperboard Co., Md.     , 47 A. 2d 385, and cases there cited.

In Conyers v. Krey Packing Co.,     Mo. App.     , 194 S. W. 2d 749, 752, it is stated:

"However, no all-embracing definition of the phrase 'arising out of and in the course of employment' has yet been framed, and every case involving this phrase should be decided upon its own peculiar facts and circumstances and not by reference to some formula. Wamhoff v. Wagner Electric Corp., Mo. Sup., 190 S. W. 2d 915, loc. cit. 917; Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S. W. 2d 601, loc. cit. 605."

The connection between injury and employment which the statute states must be such injury as arises out of and in the course of employment must be determined upon the facts of each case.

An accident occurs in the course of an employment when it takes place during the time of such employment. We speak of an incident happening during the course of any given day when it occurs during that day. Therefore, the requirement of the statute that the injury, to be compensable, must be in the course of employment means that it must occur during the time of employment.

In the case of the day laborer whose work and pay begin when he arrives at his employer's plant or place of business in the morning and end when he quits in the afternoon, the question of whether or not an injury en route to or from his home was in the course of his employment is simple. It just did not occur during his employment. There may be other considerations in such cases that would render such injury compensable which, for the purpose of this case, we need not consider. But see Cudahy Packing Co. v. Industrial Commission, 60 Utah 161, 207 P. 148, 28 A. L. R. 1394, and same case, Cudahy Packing Co. v. Parramore, supra, 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532. The rule that an injury sustained while an employee is going to or from his work will not be compensable, because not in the course of employment, is for such cases. Now suppose the employer calls such an employee at his home in the evening and tells him, "Go back to the plant and do some special work this evening." This is one of the exceptions to this so-called general rule recognized by most jurisdictions. Obviously the em-

ployer is in no position to deny that the special service he requested, namely, "go back to the plant and do some special work," was not all, including the going and coming back, in the course of his, the employer's, business. The employee on his way to and from the plant in response to the special call is just as much in his master's service as if he were sent on an errand during his work day. While he travels the same route, to the same destination, and exposed to the same hazards on a special trip as he does when he goes to work in the morning at his regular time or home after the usual quitting time, the difference lies in the business he is pursuing at the time of the journey. Ordinarily an employee whose work and pay begin when he arrives in the morning is engaged in his own business when he travels to work at the regular time. He is not pursuing his master's business. But the same employee would be pursuing his employer's business if his trip to and from the employer's plant were a special trip made in response to specific instructions to go from his home to the plant to do something for the employer's benefit. Hence the entire trip would, in the second instance, be in the course of the employment. The question to ask, then, in case an employee is injured on his way to or from his place of employment is, Whose business was he pursuing at the time? The question is to be answered from all of the facts of the case. The special errand is only one instance showing the employee was on his master's business or in the course of his employment at the time he was going from his home to his employer's place of business. There are others, as Chief Justice Hughes said, in Voehl v. Indemnity Ins. Co., 288 U. S. 162, 169, 53 S. Ct. 380, 383, 77 L. Ed. 676, 680, 87 A. L. R. 245, 249;

"While service on regular hours at a stated place generally begins at that place, there is always room for agreement by which the service may be taken to begin earlier or elsewhere."

The nature of the employment is of vital importance. In the foregoing discussion we spoke of the ordinary employee whose work and pay started when he arrived at his employer's plant. But claimant was not such an employee. The nature

of his employment made it imperative that he go to the school building on the morning of his injury to perform the services of opening the school, heating the building, and sanding the walks. As was said in Kyle v. Greene High School, 208 Iowa 1037, 1042, 226 N. W. 71, 73:

"His going to perform the service was not personal to himself, but was incidental to his employment, and in the interest of his employer."

He was the district's sole employee whose duty it was to go to the school and open it and do all that was necessary to make the school building a fit and proper place for school purposes. In the performance of those services he would be carrying out duties which, if not performed, would mean the school would not open. In other words, the "business" of the school district, if it can be called that, would completely stop if the duties ordinarily performed by claimant went undone. The school building in this case was something more than just the premises where claimant worked. It was property, owned by his employer, over which his employer had given him sole and complete charge. He was the trusted employee, in sole charge of the employer's instrumentality of business, or the school building. He had no regular hours of employment. As the sole custodian of his employer's building it was not contemplated that claimant should be there at all times but it was contemplated that he would go to the property whenever it was necessary that a custodian be present. He could lock the building up when, in the course of the master's business, it would be unused, but he must return and open it again and prepare it for use when, in the course of his master's business, it would be used again. The duty to return to the property and perform his custodial duties whenever they were necessary for the contemplated use of the property was always present. The call to return to the schoolhouse in the Kyle case merely notified the employee that his custodial services were necessary. Kyle's job, like claimant's here, included a duty to go to the property over which he was in complete charge whenever it was necessary. Surely the result would have been the same in the Kyle case if there had been no call, but Kyle,

knowing of the scheduled basketball game, was killed while on his way to open the schoolhouse for the game. There was no call for claimant in this case, but nevertheless he was in the exercise of the same duty at the time he was injured, namely, the duty to go to the employer's premises, which had been placed in his complete charge, to the end that the premises be devoted to the use contemplated by the employer. The necessity for the claimant building custodian to come to the building, fire the boilers, sand the walks, and prepare it for use by teachers and pupils on March 14, 1944, was known to claimant. The necessity for Kyle, in Kyle v. Greene High School, supra, to come to the building and fix the lights so that the building could be used for a basketball game was made known to Kyle by a telephone message to his home. In both instances the custodians were responding to an absolute necessity for their presence at the property placed in their charge. They were in pursuit of their master's business in going to the school. They were not the ordinary workmen going to work at their master's premises. They were building custodians in the performance of their duty to go to their employer's premises whenever their custodial services were necessary to the proper use of the building. The majority opinion seems to recognize that a special trip can be part of regular duties. If Kyle, knowing of the basketball game, went to the school to adjust the lights, without any telephone call from the principal, he would be making the same kind of trip the school janitor made in Kromley v. Board of Education, 13 N. J. Misc. 627, 180 A. 546, and the majority opinion states the Kromley decision "falls within the rule of our own Kyle case."

The decision of this court in Davis v. Bjorenson, supra, 229 Iowa 7, 11, 293 N. W. 829, 830, is much in point. There we held an employee was injured in the course of his employment when hurt in an automobile collision while driving his car to his employer's shop where the evidence showed the car was used by the claimant and other employees in the employer's business. This court, speaking through Justice Oliver stated:

"Thus the car was an instrumentality of the business at all hours of the day and was subject to that use at night. It

happened that claimant received no orders to make emergency service calls during the night before he was injured. Consequently, it was his duty, and this duty was regular and definite, to take the automobile to the employer's shop for his use in the business, by others as well as claimant. In so doing he was performing for his employer a substantial service required by his employment at the place and in the manner so required. * * *

"It is our conclusion that claimant was in the course of his employment when so engaged and that his injury arose out of his employment. The trial court was correct in so holding."

The instrumentality of business which claimant here had in charge was a school building. It was not movable, but he had the key, and on principle the trips to open and close the school building and render it available for his employer's business were within the agreement of employment just as much as the trips in the Davis case that rendered the movable instrumentality of the employer's business available for such business. The case of Gelbart v. New Jersey Federated Egg Producers' Assn., 17 N. J. Misc. 185, 7 A. 2d 636, is distinguished by the majority on the ground that the employee was making a special trip at the time the accident occurred. The decision does not rest on such a narrow ground. The opinion does not even discuss the "special trip" exception to the "going and coming" rule. The decision is based squarely on the employee's regular and customary duty to go to the grading station with his key and open it for business. The case is directly in point and I feel a sound application of the law.

No one can hope to reconcile all of the cases involving street accidents to employees going to and from the employer's place of business. Some courts seem to attempt to breathe liability in their decisions by narrowing the application of the "coming and going" rule as if the rule were of legislative origin. There are cases granting compensation to employees, injured on public highways, while going to work because the employee had reached the "zone of such employment." See

Barnett v. Britling Cafeteria Co., 225 Ala. 462, 464, 143 So. 813, 814, 85 A. L. R. 85, 88, where the employee fell a few feet from the entrance of her employer's place of business. In Bales v. Service Club No. 1, Camp Chaffee, 208 Ark. 692, 700, 187 S. W. 2d 321, 325, it was stated that one of the exceptions to the "coming and going" rule was where "the employee has reached a place so close to the employer's premises as to be considered a part thereof." While such decisions indicate a commendable liberality in defining an employer's premises, they should not be regarded as extending the exceptions to the "coming and going" rule. The courts are merely holding that the rule has no application because the employee has arrived at the employer's premises as the word "premises" is liberally defined.

Then there is the class of cases where the employee does some of his work at home, such as Lang v. Board of Education, S. D. , 17 N. W. 2d 695, 697, where the school principal was injured in falling on an icy street on his way from his home to the schoolhouse. The court found he did part of his work at home, so again it was held the "going and coming" rule did not apply. Since he had been working at his home before he started for the school, the court held that:

"He was not simply getting to his work, he was actually at his work, not only as to time and place, but in an act essential to continuing the work which had been started at his home."

Other cases where it has been held the rule does not apply are the cases where the employer provides the means of transportation to and from work or the time consumed is paid for or included in wages. Generally, in the cases where the rule is stated and the exceptions to it listed, one of the exceptions is stated: "Where the employee on his way to or from work is still charged with some duty or task in connection with his employment." See Kent v. Virginia-Carolina Chemical Co., 143 Va. 62, 66, 129 S. E. 330, 332; Gallman v. Spring Mills, 201 S. C. 257, 22 S. E. 2d 715. We recognized this exception in the Kyle case, where we stated the rule applied

except where the employee was on his way from home to his employer's place of business to perform "some duty incidental to the nature of his employment, in the interest of, or under the direction of, his employer." 208 Iowa 1040, 226 N. W. 73.

The case here falls within the last exception. It is the exception recognized and applied in the case of Cymbor v. Binder Coal Co., 285 Pa. 440, 132 A. 363. It is the exception recognized and applied in Gelbart v. New Jersey Federated Egg Producers' Assn., supra. Cymbor's whole job at night consisted of a trip to the mine to throw a switch that started the pumps that pumped the water out of the mine so the workmen could go to work in the mine the next morning. Part of Gelbart's job was to go to the produce station with his key to open it for business. That, too, was part of Otto's job. It was a duty incidental to his employment. Both Gelbart and Otto had other duties to perform when they reached their master's premises but the point is, the duties incidental to their employment included a duty to go, at all hazards, to the end that the employer's place be opened and made ready for business. Such employees having a duty to "open" premises certainly have an incidental duty to go to the premises to open the doors. The going then becomes a part of the incidental duties of the employment. The duty to give the law a liberal application is a command to the courts to allow compensation if the trip was a part—any part—of the bundle of duties wrapped up in the phrase "incidental to his employment."

The compensation law is for the benefit of workers, designed to compensate them for industrial injuries. As stated in Conyers v. Krey Packing Co., supra, Mo. App., 194 S. W. 2d 749, 751:

"* * * the employee is entitled to have compensation for any injury by accident arising out of and in the course of his employment, and the law should be liberally construed in furtherance of that end. If on the established facts a doubt arises as to the right of the employee to have compensation, the doubt must be resolved in favor of compensation."

Upon the established facts of this case, I am unwilling to hold that Otto was on a mission of his own when he took the trip he dreaded to make. I feel, under the special facts of this case, he was performing one of the duties incidental to his employment. I would reverse.

GARFIELD, C. J., and BLISS and OLIVER, JJ., join in this dissent.