Mildred A. FROST, Appellee,

v.

S. S. KRESGE COMPANY, Appellant,

and

Iowa Industrial Commissioner.

No. 64048.

Supreme Court of Iowa.

Dec. 17, 1980.

John B. Grier of Cartwright, Druker & Ryden, Marshalltown, for appellant.

Allan H. Rauch, Des Moines, for appellee.

LARSON, Justice.

Mildred Frost, an employee of the S. S. Kresge Company, sought workers' compensation benefits after a fall on a public sidewalk adjoining the Kresge store in Marshalltown. A deputy industrial commissioner's award was reversed upon the employer's appeal to the industrial commissioner. The district court, upon judicial review, reversed the commissioner and reinstated the deputy's award. On appeal challenges are made as to the jurisdiction of the commissioner and the district court as well as the soundness of the district court's disposition. We hold that the industrial commissioner and the district court had jurisdiction, and that Mrs. Frost is entitled to benefits under chapter 85, The Code 1977. We therefore affirm the district court.

In judicial review of agency action, the findings of fact by the agency are binding upon us if sustained by substantial evidence. § 17A.19(8)(f), The Code 1977. The facts in this case are largely without dispute. Mildred Frost was an employee of Kresge on the date of her fall. According to the commissioner's findings, her husband drove her to work earlier in the day than usual so she could attend a birthday breakfast held prior to an 8:30 store meeting. Alighting from the vehicle's passenger side, she walked around the rear of it and up a handicap ramp, or "curb cut," in the public sidewalk. After starting across the sidewalk to Kresge's front door, she slipped on an accumulation of ice. The exact location of the fall was not established; some evidence put it as far as twenty feet from the store entrance, others as close as twelve feet. The time of the incident was found by the commissioner to be "a short period of time" before the scheduled 8:00 breakfast.

■ I. *Jurisdiction on Appeal to the Industrial Commissioner.* Mrs. Frost contends there was no jurisdiction on the part of the industrial commissioner to hear and decide the employer's appeal from the ruling of the deputy commissioner because it was not taken within twenty days of that decision, as required by the commissioner's rules, 500 I.A.C. § 4.27 (1977). The deputy, however, did not purport to make a final determination in his first order. He decided only the issue of compensability, reserving the computation of benefits for a later order. Notice of appeal to the commissioner was filed within twenty days of the final order setting the amount of benefits. Rule 4.2(86) of the industrial commissioner's rules provides, in part, that "[i]f the order on the separate issue does not dispose of the whole case, it shall be deemed interlocutory for purposes of appeal." 500 I.A.C. § 4.2(86) (1977). We conclude that the order was not final, and thus the time for appeal did not begin to run until the second order was filed. *See* 82 Am.Jur.2d *Workmen's Compensation* § 622, at 329 (1976). The appeal to the industrial commissioner was therefore timely, and he had jurisdiction to proceed.

■ II. *Jurisdiction of the District Court.* Mrs. Frost, having lost on Kresge's appeal to the industrial commissioner, sought judicial review by the district court. §§ 86.26, 17A.19, The Code 1977. Section 17A.19(4) requires the petition for review to state the name of the "agency" involved. In this case, the industrial commissioner is that agency. § 86.27, ch. 86, The Code 1977. The petition for review named the "Industrial *Commission*," rather than the Commissioner, and Kresge contends this was a fatal flaw in the proceedings since there is no such agency as the "Industrial Commission."

Section 17A.19(2) provides that copies of a petition for further review

shall be mailed by the petitioner to all parties named in the petition and, if the petition involves review of agency action in a contested case, all parties of record before the agency. *Such mailing shall be jurisdictional* and shall be addressed to the parties at their last known mailing address.

(Emphasis added.) Here the agency was misnamed, and the issue is whether this is a fatal jurisdictional defect. Kresge claims no prejudice by the error, and although the

industrial commissioner did not participate in the judicial review proceeding, it is undisputed that he actually received mailed notice of its pendency.

We do not believe defects of this nature are necessarily jurisdictional. Section 17A.19(2) says such *mailing* is jurisdictional; but that subsection should not be construed to make all errors or omissions in service jurisdictional. One of the purposes of the judicial review provisions is

> to simplify the process of judicial review of agency action as well as increase its ease and availability. In accomplishing its objectives, the intention of this chapter is to strike a fair balance between these purposes and the need for efficient, economical and effective government administration.

§ 17A.23, The Code 1977; *see* Bonfield, *The Iowa Administrative Procedure Act: Background, Construction, Application, Public Access to Agency Law, The Rulemaking Process,* 60 Iowa L.Rev. 731, 758–59 (1975). Moreover, we are to construe the provisions of the administrative procedure act broadly to effectuate that purpose. § 17A.23, The Code 1977. In view of these principles, we conclude that the notice here sufficiently complied with the notice requirements of section 17A.19(2).

III. *The "Zone of Protection" of Chapter 85.* Section 85.3(1), The Code 1977, requires an employer to pay compensation "for any and all personal injuries sustained by an employee arising out of and in the course of the employment"; section 85.61(6) provides:

> The words 'personal injury arising out of and in the course of the employment' shall include injuries to employees whose service are being performed on, in or about the premises which are occupied, used or controlled by the employer, and also injuries to those who are engaged elsewhere in places where their employer's business requires their presence and subjects them to dangers incident to the business.

Mrs. Frost contends that the facts compel coverage under the statute; Kresge contends that the "going and coming" rule precludes her recovery.

The industrial commissioner held Mrs. Frost's injury did not "arise out of and in the course of" her employment because (1) it did not occur on the premises of the employer, and (2) certain recognized exceptions to the "going and coming" rule were inapplicable. Coverage of the act under the facts found by the commissioner is a legal conclusion to which we are not bound. *McDowell v. Town of Clarksville,* 241 N.W.2d 904, 907 (Iowa 1976). We disagree with the legal conclusion of the industrial commissioner in this case because (1) the site of the injury was so closely related in time, location, and employee usage to the work premises to bring the claimant within the zone of protection of the workers' compensation law and (2) the employer had exercised such control over the abutting sidewalk to make it an extension of the business premises.

The general rule is that, absent special circumstances, an employee is not entitled to compensation for injuries occurring off of the employer's premises on the way to and from work. *Farmers Elevator Co., Kingsley v. Manning,* 286 N.W.2d 174, 178 (Iowa 1979); *Otto v. Independent School District,* 237 Iowa 991, 23 N.W.2d 915 (1946); 1 A. Larson, *The Law of Workmen's Compensation* § 15.00, at 4–3 (1978). This is known as the "going and coming" rule.

Conceptually, it is clear that the employment is the *cause* of injuries in going and coming: if not for the job there would be no reason in most cases to approach or leave the premises. 1 Larson, *supra,* at 4–12. The going and coming rule pertains to the second prong of the coverage test, requiring that the injury arise "in the course of" the employment. This test measures the work connection of the incident as to time, place and activity. *Id.* at 4–1.

Several exceptions are recognized to the rule of nonliability in going and coming cases. In effect, these exceptions extend the employer's premises under certain circumstances when it would be unduly restrictive to limit coverage of compensation

statutes to the physical perimeters of the employer's premises. Under one exception it is held that any "special hazards" of an employee's route become hazards of the employment where an injury occurs on the only available route to reach the premises. *Id.* at 4–18. Similarly, travel between two separate premises of an employer which results in an injury enroute is held to be covered under a "divided premises" exception. Thus, an employer may be liable if it operates a parking lot and an employee is injured between the lot and his work site. *Id.* at 4–35–4–36. Occasionally, even the situs of an injury has been deemed the employer's premises when they are in close proximity, by applying a subjective "reasonable distance" test. *See id.* at 4–6.

Labels have been attached to these exceptions; application, however, is often difficult. In this case, for example, is an icy sidewalk a "special hazard?" (Most "special hazard" cases, in contrast to the present one, involve substantial dangers such as the crossing of railroad tracks.) And is the "divided premises" exception inapplicable because Mrs. Frost crossed the sidewalk after leaving her husband's vehicle, as opposed to crossing it enroute from an employer–operated parking lot? Or is twelve feet from Kresge's door, as opposed to twenty, as some of the evidence indicated, close enough to be considered part of the premises solely because of its proximity and, if so, where should the line be drawn?

■ Although, as discussed in division IV, Kresge's involvement in snow removal constituted control of the sidewalk, thus coming under one of the recognized exceptions to the going and coming rule, our holding is not dependent upon that ground. The nexus of the work relationship here is so strong that protection under chapter 85 is appropriate without regard to any formalistic exception to the going and coming rule. Mrs. Frost fell in an area of concentrated employee traffic, used in fact, by all employees entering and leaving the premises through the only door provided for their use by Kresge. It is not fatal to Mrs. Frost's claim that because the public also used this area of the sidewalk the risk was not "unique" or "special" to employees, as Kresge argues. To enjoy the protection of the workers' compensation law in these circumstances we do not believe it is necessary to show the risk is unique to the employees; coverage should not turn on what use others make of the area but rather on its use by the employer and its employees.

An early Alabama case addressed a similar factual situation, described by the court in *Barnett v. Britling Cafeteria Co.,* 225 Ala. 462, 463, 143 So. 813, 813 (1932), as follows:

[The claimant] sustained her injury by slipping on the sidewalk immediately in front of the defendant's place of business and while on her way to report for duty and just before entering the way used by all employees for the purpose of discharging the duties to which they were employed. The sidewalk in front of the defendant's place of business, while a public one and used by the public generally, was also used by the defendant as a necessary connection with its business. It was used not only by the public generally in passing, but as the only way of entrance to defendant's place of business by his customers and his employees as well. Not only this, but the defendant made use of it for other purposes in connection with his business, in fact, had used the sidewalk at or about that time for the purpose of washing the plate glass windows on the outside.

In concluding the injury was covered by their compensation act the court said:

A workman might be on the premises of another than his employer, or in a public place, and yet be so close to the scene of his labor, within its zone, environments, and hazard as to be, in effect, at the place and under the protection of the act. *Id.,* 143 So. at 813; *see* 1 Larson, *supra,* at 4–45—4–46.

We find the court's reasoning in *Barnett* persuasive. Applying *Barnett* to the facts here, we conclude that chapter 85 provides coverage since this fall was closely connected in time, location, and employee usage to

the work premises itself to entitle Mrs. Frost to the protection of our workers' compensation statute.

This rationale obviously becomes more attenuated as the distance between the place of injury and the business premises increases, and this is the basis upon which we distinguish *Otto v. Independent School District*, 237 Iowa 991, 23 N.W.2d 915 (1946). In *Otto*, a school janitor fell somewhere between his home and the school, five blocks away. In a four–to–four decision, a denial of workers' compensation was affirmed. There is no indication as to where the injury occurred, only that it was within the five blocks between the janitor's home and the school. Further, there is no indication that he fell in an area customarily or habitually used by employees in entering or leaving the premises; he was "traversing the regular route of his own selection." 237 Iowa at 995, 23 N.W.2d at 917.

IV. *"Extension of Premises" Exception.* One of the specific exceptions to the going and coming rule is based upon an employer's exercise of control over adjacent areas, such as sidewalks. One act of employer control held to impose liability to sidewalk injuries is the removal of ice and snow by the employer. *See* 1 Larson, *supra*, at 4–46—4–47. There was evidence that Kresge occasionally used the sidewalk adjacent to the store to display and sell merchandise. And, the industrial commissioner stated in his ruling that "[a]ccording to Wantiez, the manager, the stock person and he cleaned and maintained the sidewalks." [1]

Kresge contends that although the evidence of its acts of control over the sidewalk was uncontroverted, the commissioner did not include them in his specific "findings of fact," and therefore we may not consider them on review. We faced a similar situation in *Hawk v. Jim Hawk Chevrolet–Buick, Inc.*, 282 N.W.2d 84, 85 (Iowa 1979), where, following a detailed recitation of underlying facts, the commissioner labeled as his abbreviated "findings" only that the worker was "at a prohibited place at the time of his accident and therefore not in the course of his employment" and that his acts "constituted a hazardous rash and unusual act and therefore did not arise out of his employment." We nevertheless examined the underlying undisputed facts to assess the propriety of the commissioner's legal conclusion. When essential facts are undisputed and are not susceptible to different inferences, the effect of those operative facts becomes an issue of law. *Id.* at 87; *McClure v. Union, et al., Counties*, 188 N.W.2d 283, 284 (Iowa 1971).

Kresge did not dispute the evidence of its acts of control, and no other inference may be drawn from the facts other than it assumed the responsibility of clearing ice and snow from the adjacent sidewalks. We hold as a matter of law that Kresge's exercise of control over the sidewalk coextensively extended its work premises for workers' compensation purposes. *See* 1 Larson *supra*, at 4–46–4–51. Such extension is especially suited to the facts of this case where the employer's acts of control, removal of the ice and snow, have such a close bearing upon the cause of the claimant's injury. The district court was correct, for this additional reason, in concluding that the workers' compensation statutes afforded protection for Mrs. Frost.

AFFIRMED.

All Justices concur except SCHULTZ, J., who concurs in part and dissents in part, joined by ALLBEE, J., and LeGRAND, J., who takes no part.

SCHULTZ, Justice (concurring in part, dissenting in part).

I concur in divisions I, II, and IV of the court's opinion and in the result. I do not agree with the new exception carved out of the "coming and going rule" by the majori-

---

1. Section 364.12(2)(b), The Code 1977, imposes a duty to remove ice and snow upon the owners of adjoining premises. It does not appear in the record whether Kresge, a tenant, had removed ice and snow from the sidewalk as the owner's agent, or to enhance traffic flow to its premises, or for other reasons. For purposes of assessing the effect of these acts upon Kresge's liability it is not essential to make that determination.

ty in division III, however, and respectfully dissent from that division.

Long ago we adopted the general rule that the course of employment commences after the employee reaches the premises where his actual work is carried on. *Otto v. Independent School District*, 237 Iowa 991, 994, 23 N.W.2d 915, 918 (1946). In division III the majority sets out two exceptions to this general rule that have been recognized in many jurisdictions. I believe those exceptions, as well as the exception relied on in division IV, provide standards by which the scope of the exceptions may be reasonably measured. The exception established by the majority, however, does not provide such standards.

The exception established in division III provides coverage under chapter 85 when an employee sustains personal injuries which are "closely connected in time, location, and employee usage to the work premises." The majority finds Mrs. Frost to have been within the "zone of protection" of chapter 85 because she fell in an area of concentrated employee traffic used by all employees entering and leaving the employer's premises through the only door provided for their use. I dispute both the facts and the logic relied on by the majority.

I agree that only one door was normally available to employees for entering the work place. The door was on a public street, however, and it was accessible from several different directions and locations. In this regard this case is different from the cases in which there is only one available route to the employer's premises, such as a dead end street, and the employee must encounter special hazards, such as a railroad crossing.

The principal basis for my objection, however, is that the exception established in division III does not provide ascertainable standards or guidelines for determining the scope of coverage of chapter 85. How close in time, how near in location, and how heavy the employee usage are questions that need to be answered. There are no objective criteria for determining where the zone of protection begins and where it ends.

We must recognize that the workers' compensation act is administered by and large by persons not formally trained in the law. If we are to expect these individuals to administer the law according to the will of the legislature, it is imperative that we provide them with reasonably specific standards to apply in contested case proceedings.

I would affirm the decision of the trial court solely on the basis of the exception articulated in division IV.

ALLBEE, J., joins this concurrence in part and dissent in part.