CRAIG CHRISTMAN, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Walsh Construction Company, Appellant).

Third District (Industrial Commission Division)   No. 3—86—0737WC

Opinion filed August 24, 1987.

John Cunningham, of Laughlin, Cunningham, Hare & Fanone, of Chicago, for appellant.

Peter F. Ferracuti, of Law Offices of Peter F. Ferracuti, P.C., of Ottawa, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

Claimant, Craig Christman, filed an application for adjustment of claim under the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 *et seq.*) for a back injury which allegedly arose out of and during the course of his employment with Walsh Construction Company (hereinafter employer). After conducting a hearing, the arbitrator denied benefits; this denial was affirmed on review by the Industrial Commission. However, the circuit court reversed this determination, concluding that the denial of benefits was contrary to the manifest weight of the evidence. The employer appeals this ruling pursuant to Supreme Court Rule 22(g) (103 Ill. 2d R. 22(g)). The facts are as follow.

On April 15, 1983, at approximately 7 a.m., claimant, a union ironworker, arrived for his 8 a.m. shift outside of a nuclear power plant where his jobsite was located. Prior to entering the power plant, claimant obtained a "brass" (*i.e.*, an identification used for payroll purposes in lieu of a time clock) from the employer's "brass shack," then proceeded to the power plant security building, where he was required to walk through a metal detector and have his lunch bucket X-rayed. Claimant then obtained a security badge and walked across the power plant grounds to a "change shack."

Claimant arrived at the change shack at approximately 7:20 a.m.

He sat in his usual place at a table and joined a card game with three fellow ironworkers working for the employer. At approximately 7:35 a.m. claimant arose from the bench where he was sitting and went to a water cooler located across the room. After obtaining a drink of water, claimant walked toward the bench where he had been sitting. Before he arrived at the bench, claimant slipped on the floor and fell across an empty bench, fracturing a lumbar vertebra.

Claimant, who testified that he was in great pain after the fall, noticed that his pants and the floor upon which he was lying were wet. Norman Goodrich, one of the ironworkers with whom claimant had been playing cards, also testified that the floor where claimant was lying immediately after the fall was wet. Mr. Goodrich further related that there was a place in the floor where it appeared as though a foot had slipped and skidded on the wet floor. Goodrich further testified that the floor was often wet due to leaks in the change shack roof. It was not definitively established whether it had rained or snowed within relevant proximity of April 15, 1983.

According to claimant, the change shack was actually part of a larger building which housed an office where the employer's supervisory personnel conducted business and change shacks for laborers and carpenters working for the employer. The change shack for the ironworkers, which was approximately 700 feet from the jobsite, was a place where the employer's ironworkers were allowed to change clothes, wash, take breaks from their work, and wait for the beginning of their shift. This change shack opened at 7 a.m. for ironworkers employed on the 8 a.m. shift. The record indicates that it was important to be on time for work because being late would result in the employee being "docked" at least one-half hour of pay. Although the 8 a.m. shift ended at 4:30 p.m., the employer allowed the ironworkers to enter the change shack 10 minutes early so they could wash themselves before leaving work.

The Industrial Commission stated that on these facts it could not find that claimant's injuries arose out of and during the course of his employment. The employer asserts on appeal that this decision is not contrary to the manifest weight of the evidence; consequently, the employer urges that the order of the circuit court reversing the Industrial Commission decision must be reversed.

The purpose of the Illinois Workers' Compensation Act is to protect the employee against risks and hazards which are peculiar to the nature of the work he is employed to do. (*Fisher Body Division, General Motors Corp. v. Industrial Com.* (1968), 40 Ill. 2d 514, 517, 240 N.E.2d 694, 696.) An injury is compensable under the Act only if

it "aris[es] out of" and "in the course of" the employment. (Ill. Rev. Stat. 1983, ch. 48, par 138.2.) The phrase "in the course of" refers to the time, place, and circumstances under which the accident occurred. An injury "arising out of" one's employment may be defined as one which has its origin in some risk so connected with, or incidental to, the employment as to create a causal connection between the employment and the injury. (*Orsini v. Industrial Com.* (1987), 117 Ill. 2d 38, 45.) Stated differently, an injury sustained by an employee arises out of his employment if the employee at the time of the occurrence was performing acts he was instructed to perform by his employer, acts which he has a common law or statutory duty to perform while performing duties for his employer, or acts which the employee might be reasonably expected to perform incident to his assigned duties. *Howell Tractor & Equipment Co. v. Industrial Com.* (1980), 78 Ill. 2d 567, 573, 403 N.E.2d 215, 217.

■ The term "employment" contemplates not only actual work time, but a reasonable time before commencing and after concluding actual employment. (See *Brooks v. Carter* (1981), 102 Ill. App. 3d 635, 638, 430 N.E.2d 566, 568.) The record in the case at bar establishes (1) that the brass shack and the change shack furnished by the employer opened at 7 a.m. for the 8 a.m. shift, (2) that the employer's ironworkers had to obtain a brass from the employer's brass shack and pass through plant security before being admitted to the plant grounds, where the change shack and the jobsite were located, (3) that an ironworker, such as claimant, would be "docked" at least one-half hour of pay for being late to the jobsite, (4) that claimant sustained his injuries while walking from a water cooler where he had just obtained a drink and (5) that the floor upon which claimant fell was wet.

■ We conclude that under the circumstances present in the case at bar claimant could reasonably be expected to arrive at the nuclear plant up to one hour before he was scheduled to work and to use the change shack for his personal comfort before working hours. We further conclude (1) that the act of obtaining a drink of water while in the change shack was a reasonably necessary act of personal comfort which was incidental to claimant's employment duties and (2) that the injury incurred by claimant when he fell on the wet floor while walking from the water cooler was not the result of a risk personally assumed by claimant. (See *Chicago Extruded Metals v. Industrial Com.* (1979), 77 Ill. 2d 81, 84-85, 395 N.E.2d 569, 570-71.) Finally, we conclude that no other permissible inferences may be drawn from these facts (*c.f. Williams v. Country Mutual Insurance Co.* (1975), 28 Ill.

App. 3d 274, 277-79, 328 N.E.2d 117, 120-21); consequently, the Industrial Commission's determination that claimant's injury did not arise out of and during the course of his employment is contrary to the manifest weight of the evidence.

For the foregoing reasons, the decision of the circuit court is affirmed and the cause is remanded to the Industrial Commission for further proceedings consistent with the views expressed herein.

Affirmed and remanded.

BARRY, P.J., and McCULLOUGH, McNAMARA, and WOODWARD, JJ., concur.