**Jane L. ROSE, Plaintiff,**

v.

**CADILLAC FAIRVIEW SHOPPING CENTER PROPERTIES (DELAWARE) INC., a Delaware corporation; JMB Retail Properties Company, a/k/a JMB Retail Properties Co., a/k/a JMB Retail Properties Co., Inc.; JMB Properties Company, a/k/a JMB Properties Co., a/k/a JMB Properties Co., Inc., a/k/a JMB Properties Company, Inc.; Sears, Roebuck and Co., a foreign corporation; and Abacus Corporation, a foreign corporation, t/a Abacus Security Services, Defendants.**

**Civ. A. No. 94C–03–024.**

Superior Court of Delaware, Kent County.

Submitted: May 18, 1995.
Decided: Aug. 16, 1995.

I. Barry Guerke, Parkowski, Noble & Guerke, Dover, Delaware, for Plaintiff.

Ann D. Carey, Elzufon, Austin & Drexler, Wilmington, Delaware, for Defendant Cadillac Fairview Shopping Properties (Delaware); CFUS Properties, Inc.; JMB Properties Company; and all other named JMB Entities.

William F. Taylor, Young, Conaway, Stargatt & Taylor, Wilmington, Delaware, for Abacus Corporation.

William J. Cattie, III, Heckler & Cattie, Wilmington, Delaware, for Sears, Roebuck and Company.

### OPINION & ORDER

TERRY, Resident Judge.

This is a personal injury action in which plaintiff, Jane L. Rose *, was abducted from the Dover Mall parking lot and raped. Plaintiff alleges that the defendants who are

---

* A pseudonym selected by the Court.

the owners and managers of the Dover Mall, the security company employed by the mall and the employer ("Sears"), were negligent in failing to provide adequate security in the parking lot. Before the Court is defendant Sears' Motion to Dismiss plaintiff's Complaint based on Superior Court Civil Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## FACTS

On Sunday August 30, 1992, plaintiff was working for Sears as a part-time sales associate in the Dover Mall store. On Sundays Sears opened at 12:00 p.m. and employees were required to clock in within 5 minutes before or after 11:30 so as to prepare for the opening of the store. Plaintiff testified at her deposition that she normally would arrive on Sundays about fifteen to thirty minutes early, eat her lunch in the break room provided by Sears for its employees and then go to clock in and receive her cash register key.

That morning plaintiff got up too late to attend church services and decided to go to her boyfriend's house to see if he wanted to have breakfast with her. He did not, so plaintiff ate breakfast alone at Denny's near the mall after which she went directly to the parking lot at the mall and parked her car in the area where Sears had instructed its employees to park. Plaintiff testified she arrived between 10:35 and 10:40 and intended to go into Sears and read the paper in the break room until check-in time as there was usually a paper there. After parking, plaintiff was about to get out of her car when an unknown male robbed and abducted her. After raping her, the assailant drove plaintiff back to the mall parking lot, dropped her off and abandoned the car. Plaintiff went into Sears and informed her supervisor of what

had happened. To date the perpetrator has not been found.

Under the lease between Sears and the mall ownership, the responsibility for the parking lot largely fell to mall management which undertook to provide security, illumination and maintenance. The lease requires the tenants to instruct employees to park in remote locations where patrons of the mall would not be likely to park. In addition, the lease requires the landlord to ensure that the parking lot be in a condition suitable for its intended use up to one hour prior to the opening of the tenant's facility. Sears instructed its employees, including plaintiff, to park in designated parking spaces which, however, were not marked as exclusively belonging to Sears' employees and customers were not precluded from parking there. Sears had installed an outside surveillance camera which panned the parking area designated for Sears employees to monitor the parking lot and some outside storage trailers. In addition, Sears security officers were available to escort employees to and from their cars if so requested. On the Sunday in question, there were other Sears employees already parked in the area designated for Sears employees including the car belonging to plaintiff's immediate supervisor.

Sears has moved to dismiss contending that worker's compensation provides the exclusive remedy for the injuries sustained by plaintiff or in the alternative that Sears owed no duty of care to plaintiff because the lease agreement between the owners of the mall and Sears placed security obligations for the parking lot on the mall owners. Plaintiff and the other defendants oppose this motion arguing that worker's compensation is not the appropriate remedy because the incident did not occur in the course of or arising out of the employment.[1]

---

1. The plaintiff also argues Sears waived the right to assert the exclusivity defense by failing to file a report with the Industrial Accident Board after the incident as required by 19 *Del.C.* § 2313. Although there is no dispute Sears did not file the documentation required by 19 *Del.C.* § 2313, plaintiff has not shown sufficient facts to establish a waiver. "A waiver is the intentional relinquishment of a known right, either in terms or by such conduct as clearly indicates an intention to renounce a known privilege or power." *Nathan Miller, Inc. v. Northern Ins. Co. of New York,* Del.Super., 39 A.2d 23, 25 (1944). Plaintiff would have the Court infer that failure to file the first report of injury by management at Sears amounts to a belief on the part of Sears that it could not assert the exclusivity defense. Plaintiff has failed to put forward any facts to establish either the intent or knowledge portion of the test to determine if there was a waiver. The test for ascertaining the knowledge possessed by a party is what the party knew or by the exercise of reasonable diligence could have known at the

They also oppose Sears' second argument by asserting that the issue is not yet ripe since discovery has not been completed pursuant to the scheduling order entered in this case.

### STANDARD OF REVIEW

Although this is a motion to dismiss, Sears has submitted evidence outside of the pleadings including deposition testimony and other documentary evidence. Consequently, the motion shall be treated as one for summary judgment. *Shultz v. Delaware Trust Co.*, Del.Super., 360 A.2d 576, 578 (1976). A motion for summary judgment requires the court to examine the record to determine whether any genuine issues of material fact exist. *Burkhart v. Davies*, Del. Supr., 602 A.2d 56, 59 (1991), *cert. denied*, 504 U.S. 912, 112 S.Ct. 1946, 118 L.Ed.2d 551 (1992). If, after viewing the record in the light most favorable to the non-moving party, the court finds no genuine issue of material fact, summary judgment is appropriate. *See Nash v. Connell*, Del.Ch., 99 A.2d 242, 243 (1953). However, summary judgment may not be granted when the record indicates a material fact is in dispute or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances. *Ebersole v. Lowengrub*, Del.Supr., 180 A.2d 467, 470 (1962). In making its determination, the Court will consider the pleadings, depositions, answers to interrogatories, admissions on file and affidavits. Super.Ct.Civ.R. 56(c).

### DISCUSSION

The first issue is whether or not plaintiff's tort action against her employer, Sears, is barred by the "exclusivity defense" found in 19 *Del.C.* § 2304. That statute provides:

> Every employer and employee, adult and minor, except as expressly excluded in this chapter, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies.

Thus, in order for Sears to prevail on the exclusivity defense, it must prove (1) plaintiff is an employee, (2) plaintiff suffered a "personal injury" and (3) the injury arose out of and in the course of employment. *Battista v. Chrysler Corp.*, Del.Super., 454 A.2d 286, 288 (1982). The parties do not dispute that plaintiff was an employee of Sears and that she suffered a personal injury. The key dispute between the parties is whether the injury she suffered arose out of and in the course of her employment.

The requirements "arising out of" and "in the course of" employment are two separate requirements both of which must be met for worker's compensation to be applicable. *Dravo Corp. v. Strosnider*, Del.Super., 45 A.2d 542, 543 (1945), *citing, Children's Bureau of Delaware v. Nissen*, Del.Super., 29 A.2d 603 (1942). The term "in the course of employment" refers to the time, place and circumstances of the injury. *Dravo*, 45 A.2d at 543. "It covers those things that an employee may reasonably do or be expected to do within a time during which he is employed and at a place where he may reasonably be during that time." *Id.*, at 543–44. The term "arising out of employment" relates to the origin of the accident and its cause. *Id.* at 544. The court in *Dravo* said:

> It is sufficient if the injury arises from a situation which is an incident or has a reasonable relation to the employment, and that there be some causal connection between the injury and the employment.

*Id.* Thus, in order to be compensable, the injury must have been caused in a time and place where it would be reasonable for the employee to be under the circumstances. Also, there must be a reasonable causal connection between the injury and the employment.

time of the purported waiver. *Moore v. Travelers Indem. Ins. Co.*, Del.Super., 408 A.2d 298, 302 (1979). Those facts which support the finding of waiver must be unequivocal in character. *Realty Growth Investors v. Council of Unit Owners*, Del. Supr., 453 A.2d 450, 456 (1982). Such is not the

case here. Plaintiff has also failed to establish, any intent on the part of Sears to waive its right to assert this defense. The intent to waive will not be implied from slight circumstances. *Vechery v. Hartford Acc. & Indem. Ins. Co.*, Del.Supr., 121 A.2d 681, 685 (1956).

■ To determine whether plaintiff's injury arose in the course of employment, the defendant must show first that the parking lot was part of the employer's premises in order to overcome the "going and coming" rule and second that her arrival forty-five to fifty minutes early was a reasonable amount of time prior to the commencement of her work so as to bring it within the "work day."

■ As a general rule, an injury occurring while an employee is on his way to work or on his way home from work is noncompensable under the "going and coming rule of employer nonliability." *Histed v. E.I. du Pont de Nemours & Co.*, Del.Supr., 621 A.2d 340, 343 (1993), *citing, Bernadette's Hair Designers v. Incollingo*, Del.Super., C.A. No. 89A–JN–10, Babiarz, J., 1990 WL 105023 (July 16, 1990). An exception to this rule has developed, known as the "premises" exception. *See*, 1 A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 15.11 (1993). Under this exception, once an employee reaches the premises of his employer he is covered by worker's compensation. *Id.* In a majority of jurisdictions, the premises of an employer includes the parking lot, regardless of whether or not the lot is owned or controlled by the employer. LARSON at §§ 15.42(a)–(c).

This rule is recognized in Delaware. In *Quality Car Wash v. Cox*, Del.Super., 438 A.2d 1243, 1246 (1981) *rev'd on other grounds, Cox v. Quality Car Wash*, Del. Supr., 449 A.2d 231 (1982)[2], this court adopted the position that in order to be considered part of the employer's premises, the employer must exercise some sort of control over the parking lot. In that case, an employee of the car wash was struck by a car while attempting to cross a public road. His car was parked in a paved parking lot of a shopping center across the road from the car wash where he worked. The car wash did

not own or otherwise maintain the paved lot; however the employer did know employees parked there at times. There was an unpaved lot maintained by the employer for the benefit of employees next to the car wash, but employees used the paved lot across the street. The court, quoting 1 LARSON at § 15.41 said,

> This rule is by no means confined to parking lots owned, controlled, or maintained by the employer. The doctrine has been applied when the lot, although not owned by the employer, was exclusively used, or used with the owner's special permission, or just used, by the employees of this employer.

The Delaware Supreme Court reversed the factual findings of the Superior Court and concluded that there was substantial evidence to support the Board's conclusion that the paved lot across the road from the car wash was part of the employer's premises under a "control by use" theory. *Cox*, 449 A.2d at 232.

Another Delaware case likewise recognizes the "parking lot rule." In *Bernadette's Hair Designers v. Incollingo, supra*, the plaintiff fell in the parking lot of the shopping center where her place of employment was located. In that case, the employer rented space from the landlord. The maintenance of the parking lot was the responsibility of the landlord. The tenant's only responsibility was for clearing snow and ice from immediately in front of the leased space; however the fall was not related to snow or ice. The employer instructed her employees to park in the areas where customers would not be likely to park. The Court found, based on the reasoning in *Quality Car Wash, supra*, that the parking lot was part of the employer's premises. The court relied primarily on the fact that the employer instructed the employees as to where to park.[3]

---

2. The Delaware Supreme Court reversed the factual findings of the Superior Court, but did not reverse the law the Superior Court applied to the case.

3. The premises exception to the "going and coming rule" and particularly the parking lot rule has been adopted by courts around the country. *See, e.g., Smith v. General Motors Assembly Div.*, 18 Md.App. 478, 307 A.2d 725 (1973), where an

employee was assaulted in the parking lot of his employer. The court held that an employee is in the course of employment when he arrives on the employer's premises, including a parking lot provided for employees, ready to proceed or in the act of proceeding directly to work without deviation. *Smith*, 307 A.2d at 729 (citations omitted). *See also De Hoyos v. Industrial Comm'n*, 26 Ill.2d 110, 185 N.E.2d 885 (1962) (An employee in-

■ In the case *sub judice*, Sears directed its employees to park in a certain area of the mall parking lot. Sears knew of and condoned the use of that specific area of the lot by its employees. Security cameras sweeping outside of Sears encompassed the area where employees parked. Employees were required to report before the store opened and as a result before the general public was parking in the lot. Security officers were available at times to escort employees to and from that area of the lot. It is true that Sears had a lease arrangement with the mall owners which relieved Sears of maintenance and other security obligations; however, based on Delaware law and a review of case law from around the country, Sears exhibited sufficient indicia of control to bring the parking lot within the ambit of its premises for worker's compensation purposes. Consequently, when plaintiff arrived at the parking lot of Sears to report for work, she was on her employer's premises.

■ This does not end the inquiry under the case at bar. The question then becomes, was plaintiff in the course of her employment when she arrived on her employer's premises approximately 50 to 55 minutes prior to her scheduled clock-in time. No Delaware case that I have been able to find addresses this issue. After reviewing case law from around the country, it appears that the general rule is that the hours of employment include a reasonable amount of time before and after the scheduled work hours. For example, in *Carter v. Volunteer Apparel, Inc.*, Tenn. Supr., 833 S.W.2d 492 (1992) an employee arrived approximately 50 minutes early for work, as was her custom and proceeded to the break area where she fell and sustained injuries. The court held,

We are of the opinion that injuries occurring on the premises at a reasonable time before work begins are "in the course of employment" even thought this period is technically outside the regular hours of employment.

*Carter*, 833 S.W.2d at 494. The court, citing 1A LARSON, WORKMEN'S COMPENSATION LAW, § 21.21(a) noted that a reasonable interval before working hours is in the course of employment while the employee is on the premises engaged in preparatory or incidental acts. *Id.* Incidental acts include eating, drinking, smoking, seeking toilet facilities and seeking fresh air, coolness or warmth. *Id.*, at 495. In this case, the Court found it significant that the employer provided a break area for its employees and that it acquiesced in pre-work breaks. *Id.*

Similarly, the court in *Serean v. Kaiser Aluminum & Chem. Co.*, La.Ct.App., 277 So.2d 732 (1973), found worker's compensation benefits to be applicable where the employee arrived for work 45 minutes early and was injured slipping on a bottle as he got out of his car. The court held that hours of service included a reasonable interval before work. *Serean*, 277 So.2d at 732. The court also noted that this is especially the case where the employer acquiesced in the employee's customary early arrival. In *Queen v. General Motors Corp.*, 38 Mich.App. 630, 196 N.W.2d 875 (1972), an employee arrived one half hour early to work and was riding around the parking lot on another employee's motorcycle when he was struck by a car. The court concluded that the employee's in-

jured walking to work from the parking lot is eligible for worker's compensation. Whether the employer owns the lot is immaterial so long and the employer provided the lot for employees); *Stewart v. United States*, 716 F.2d 755, 762 (10th Cir.1982) ("It is not decisive that the employer of an injured employee is not the record title owner of the parking lot where the injury occurred."), *cert. denied*, 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 359 (1984). In *Livingstone v. Abraham & Straus, Inc.*, 111 N.J. 89, 543 A.2d 45 (1988), an employee of a tenant in a mall was injured while walking from the remote part of the parking lot where she was instructed to park by her employer. In that case, the employer did not own or maintain the parking lot and all of the lot was available for use by the public. The court held that the employee's work day commenced when she arrived at the section of the mall where she was supposed to work, so she was in the course of her employment when she was injured. *Livingstone*, 543 A.2d at 53. The court also held that although the employer lacked control in the formal property law sense, it possessed, factually almost the identical attributes of control. *Id.* 543 A.2d at 54. The court found the relevant attributes of control to be the fact that the employer instructed its employees to park in the remote area and the fact that the employer had the power to appropriate the far corner to its own use. *Id.*

juries arose out of and were in the course of his employment because he was on his employer's premises while waiting within a reasonable amount of time for his shift to begin. *Queen*, 196 N.W.2d at 879. *Accord Winn Dixie Stores, Inc. v. Akin*, Fla.Dist.Ct.App., 533 So.2d 829, 830 (1988) (Employee arrived half hour early, injury found to be in the course of employment), *rev. denied*, Fla. Supr., 542 So.2d 988 (1989); *Montanaro v. Guild Metal Products, Inc.*, 108 R.I. 362, 275 A.2d 634, 636 (1971) (Employee arrived one hour early, injury found to be in the course of employment); *Jones v. Bendix Corp.*, Kansas City Ct.App., 407 S.W.2d 650, 650–52 (1966) (Drinking a cup of coffee ten to fifteen minutes prior to embarking on duties is reasonably incident to work).

Finally, in *Christman v. Industrial Comm'n*, 159 Ill.App.3d 479, 111 Ill.Dec. 415, 512 N.E.2d 804 (1987), an employee arrived at work at 7:00 for an 8:00 shift. The employer provided a change shack for the employees. At 7:20, the employee joined a card game in the shack with his fellow employees. At 7:35, the employee got up to cross the room to go to a water cooler. He slipped, fell and was injured. The court said "the term 'employment' contemplates not only actual work time, but a reasonable time before commencing and after concluding actual employment." *Christman*, 111 Ill.Dec. at 417, 512 N.E.2d at 806. The court noted that obtaining a drink while in the change shack was a reasonably necessary act of personal comfort which was incidental to claimant's employment duties, that the change shack was open early for the employees, that the employees had to pass through security before being admitted to plant grounds and that employees would be docked in pay for being late. The court stated:

> We conclude that under the circumstances present in the case at bar claimant could reasonably be expected to arrive at the nuclear plant up to one hour before he was scheduled to work and to use the change shack for his personal comfort before working hours. We further concluded (1) that the act of obtaining a drink of water while in the change shack was a reasonably necessary act of personal comfort which

was incidental to claimant's employment duties . . .

*Id.* (citations omitted).

 In the case at bar, the plaintiff testified that she intended to go into the break room in Sears and read the paper until her shift was to begin. She stated that in the past she has arrived at work early on Sundays and used the break room to eat her lunch or read the paper. Such acts constitute reasonably necessary acts of personal comfort that are incident to her employment. In addition, it is not unreasonable for plaintiff to arrive well in advance to perform such functions. Case law from around the country creates a reasonable span of time before and after work which is included within the work day for the purposes of worker's compensation. Under the facts of this case, 50 to 55 minutes is not unreasonable. She arrived at the parking lot with the express purpose of parking and proceeding directly into Sears to wait for the beginning of her shift. There is no evidence of any other personal purpose not connected with employment. The facts lead only to the conclusion that when plaintiff arrived at Sears she was contemplating the upcoming work day and was in the course of her employment when she was attacked.

Next, the court must consider whether the injury suffered by plaintiff arose out of her employment. In its motion to dismiss, Sears argues that an attack by an unknown third party constitutes a compensable injury. The plaintiff and the other defendants assert that the attack on plaintiff did not arise out of her employment because she was not engaged in any activity that benefitted her employer at the time of the attack.

 As noted above, "an injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment or has a reasonable relation to it." *Dravo*, 45 A.2d at 544. It appears that Delaware recognizes the distinction propounded by Larson between attacks on employees that are of a personal nature and

attacks on employees that are essentially "neutral" in character. *See* 1 LARSON, THE LAW OF WORKMEN'S COMPENSATION, § 11.31 (1993).[4] In *Ward v. General Motors Corp.*, Del.Super., 431 A.2d 1277, 1280–81 (1981), this court described the difference between an attack on an employee of a strictly personal nature as opposed to a random, neutral attack and said:

> On the other hand, an attack on an employee by a stranger whose action was motivated by robbery or mistake as to identity was not directed at the employee by personal reasons and did not bar Workmen's Compensation.

*Ward,* 431 A.2d at 1281 (citations omitted).

Case law from other jurisdictions is helpful. In *Helton v. Interstate Brands Corp.*, 155 Ga.App. 607, 271 S.E.2d 739 (1980), an employee was abducted from her employer's parking lot and raped by an unknown assailant who turned out to be another employee. The plaintiff sued her employer in tort. The court found that worker's compensation was the sole remedy available to the plaintiff and held that the wilful act of a third person is still compensable if the wilful act is not directed against the employee for reasons personal to the employee. *Helton,* 271 S.E.2d at 740. The court also found that the assault arose out of her employment because the conditions of employment created the risk, including the early hour that the plaintiff had to report to work and the location of the employer's parking lot. Similarly, the court in *Zahn v. Associated Dry Goods Corp.*, Mo. Ct.App., 655 S.W.2d 769, 772 (1983) held that an assault on the plaintiff as she left work

twenty minutes after her shift ended which was an irrational, unexplained assault of neutral origin is a compensable accident.

■■■ In this case the plaintiff had arrived in the parking lot intending to proceed directly to the break room at Sears. Since I have found that she was in the course of her employment at the time of the attack, she was therefore in a place where she could be expected to be prior to entering the store at a reasonable time. In addition, her work required her to arrive early, when the public would be less likely to be present and to park in a certain area of the lot. Thus, the conditions of her employment increased the likelihood of an attack of this nature. Consequently, there is a reasonable relation between the attack and her employment. Whether she had slipped and fallen on uneven pavement or had been attacked, the injury would be compensable under worker's compensation. There is no dispute of fact that the attack on the plaintiff was by an unknown assailant, who assaulted her for no reason personal to her. She did not know this perpetrator prior to the attack. Thus, the attack was of the "neutral" category that brings it within the realm of worker's compensation and prohibits a suit in tort against her employer, Sears. There existed a causal connection between plaintiff's presence in the parking lot preparing to work and the attack; therefore, the injuries she suffered arose out of her employment.[5]

### CONCLUSION

■■■ The exclusivity provisions found at 19 *Del.C.* § 2304 bars plaintiff's suit against

---

4. "Wilful assaults upon the claimant, like injuries generally, can be divided into three categories: those that have some inherent connection with the employment, those that are inherently private, and those that are neither, and may therefore be called "neutral" ...

5. The statue of limitations pertaining to the filing of workers compensation benefits found at 19 *Del.C.*, § 2361 usually bars claims not filed within two years of the injury. However, the time period does not begin to run until the claimant, as a reasonable person, should recognize the

nature, seriousness, and *probable compensable character* of the injury. *Chrysler Corp. v. Nickle*, Del.Super., C.A. No. 81A–MR–14, Christie, J. (Nov. 3, 1981). Should the plaintiff choose to file a claim with the Industrial Accident Board, the Board should consider whether the probable compensable character of her injury was determined as of the date of this opinion. Sears would, I imagine, have a difficult time taking a contrary position in view of the fact that its employees apparently did not perceive the claim to be subject to worker's compensation and in light of the position Sears has taken in this case.

Sears because the injury arose out of and in the course of plaintiff's employment.[6] Therefore, Defendant Sears, Roebuck and Company's Motion to Dismiss pursuant to Superior Court Civil Rule 12(b)(6) is hereby *granted.*

6. As a result of the Court's holding on the exclusivity arguments, it is not necessary to address the parties' contentions with regard to the tort action and premises liability.