# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ALSIDE SUPPLY CENTER, | ) | |
| | ) | |
| Employer-Below, Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. N20A-07-002 JRJ |
| | ) | |
| JEREMY BOTTOMLEY, | ) | |
| | ) | |
| Claimant-Below, Appellee. | ) | |
| | ) | |

## MEMORANDUM OPINION

Submitted: January 26, 2021
Decided: March 29, 2021

*Upon Alside Supply Center's Appeal from Decision and Order of the Industrial Accident Board*: **AFFIRMED**.


Morgan Sack, Esquire, Cipriani & Werner, P.C., 1000 N. West Street, Suite 1200, Wilmington, DE 19801, Attorney for Employer-Below, Appellant.

Nicholas M. Krayer, Esquire, Pratcher Krayer LLC, 1300 N. Grant Avenue, Suite 206, P.O. Box 591, Wilmington, Delaware 19899, Attorney for Claimant-Below, Appellee.


**Jurden, P.J.**

# I. INTRODUCTION

One morning, Jeremy Bottomley ("Claimant") drove to work and parked in the parking lot near the building occupied by his employer, Alside Supply Center ("Alside"). As he exited his vehicle and headed toward the building, Claimant was physically assaulted by three unknown males and suffered severe injuries as a result. In the proceeding below, the Industrial Accident Board (the "Board") found that the injuries arose out of Claimant's employment with Alside for purposes of the Workers' Compensation Act. Specifically, the Board found that the "conditions of employment at Alside increased the likelihood of an attack by the unknown assailants as Claimant arrived for work" and that "credible evidence exists of work-related tension that could have led to Claimant['s] being a target for the attack."[1] On appeal, Alside argues that the Board's conclusions were not supported by substantial evidence. As explained below, the Court finds that substantial evidence supports both conclusions. Accordingly, the Board's Decision and Order is **AFFIRMED**.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Procedural History

---

[1] Appellant-Employer, Alside Supply Center's Opening Brief on Appeal of the Industrial Accident Board's Decision Dated June 19, 2019 ("Opening Brief"), Exhibit C ("Board Decision"), at 20 (Trans. ID. 66202604).

The assault and injury occurred on August 3, 2018.[2]  On August 27, 2018, Claimant filed a Petition to Determine Compensation Due.[3]  The parties agreed to split the resolution of Claimant's Petition into two hearings.[4]  In the first hearing, the Board would determine whether the injuries arose out of and occurred within the scope of Claimant's employment with Alside.[5]  If the Board determined that they did, then the second hearing would focus on the extent of the benefits owed.[6]

On May 21, 2019, the Board held the first hearing.[7]  The parties did not dispute that Claimant's injuries occurred during course of employment, so the only issue was whether the injuries arose out of Claimant's employment.[8]  In its June 19, 2019 post-hearing decision, the Board concluded that they did.[9]  On July 10, 2019, Alside appealed the Board's decision, but, on November 5, 2019, the Board dismissed the appeal as interlocutory because the second hearing had not taken place.[10]  On June 2, 2020, the Board held the second hearing, and it issued its second post-hearing decision on June 9, 2020.[11]  Alside now appeals the Board's first decision, arguing

---

[2] *Id.* at 2.
[3] Opening Brief, Exhibit A (Trans. ID. 66202604).
[4] Opening Brief, at 1 (Trans. ID. 66202604); Appellee's Answering Brief ("Answering Brief"), at 5 (Trans. ID. 66241463).
[5] Opening Brief, at 1 (Trans. ID. 66202604); Answering Brief, at 5 (Trans. ID. 66241463).
[6] Opening Brief, at 1 (Trans. ID. 66202604); Answering Brief, at 5 (Trans. ID. 66241463).
[7] Opening Brief, Exhibit B (Trans. ID. 66202604).
[8] *See generally* Board Decision (Trans. ID. 66202604).
[9] Board Decision (Trans. ID. 66202604).
[10] Opening Brief, Exhibit E (Trans. ID. 66202604).
[11] The Board had miscalculated the benefits owed, so Claimant filed an unopposed Motion for Reargument on June 16, 2020, and the Board granted it on June 18, 2020.  Opening Brief, Exhibit H, at 1 (Trans. ID. 66202604).  *See generally* Opening Brief, Exhibit H (Trans. ID. 66202604).

that substantial evidence does not support the Board's conclusion that Claimant's injuries arose out of his employment with Alside.[12]

## B. Facts Presented

The Decision and Order at issue relies heavily on the testimony provided by Detective Raymond Shatley.[13] At the time of the assault, Detective Shatley was assigned to the Major Crimes Unit of the Delaware State Police.[14] He investigated Claimant's assault, and that investigation revealed the following.[15]

At about 6 a.m. on August 3, 2018, Claimant arrived at his usual parking location—the parking lot on the left side of Alside's building.[16] When he arrived, Claimant noticed that there was a silver van parked nearby.[17] Claimant exited his vehicle and headed toward the building.[18] Moments later, Claimant was approached by a masked man.[19] Two more masked men soon approached Claimant, and all three assaulted him with a baseball bat and a chain.[20] The men said nothing during the

---

[12] Notice of Appeal Pursuant to Rule 72 (Trans. ID. 65753845). *See generally* Opening Brief (Trans. ID. 66202604); Appellant-Employer, Alside Supply Center's Reply Brief on Appeal of the Industrial Accident Board's Decision Dated June 19, 2019 ("Reply Brief") (Trans. ID. 66285895). On December 21, 2020, Alside filed its Opening Brief. *See generally* Opening Brief (Trans. ID. 66202604). On January 11, 2021, Claimant filed his Answering Brief. *See generally* Answering Brief (Trans. ID. 66241463). On January 26, 2021, Alside filed its Reply Brief. *See generally* Reply Brief (Trans. ID. 66285895).

[13] *See generally* Board Decision (Trans. ID. 66202604).

[14] *Id.* at 3.

[15] *Id.*

[16] *See id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.* at 3–4.

assault, and they did not rob Claimant of any of his personal belongings.[21]  After the assault, the men drove away in the silver van.[22]  Although there were no security cameras on the left side of Alside's building, a nearby camera showed that the van had pulled into the parking lot a few minutes before Claimant arrived.[23]  But the camera did not reveal the van's license plate, nor did it capture the images of the assailants inside of the van.[24]  At the time of the assault, no one else was at Alside except for one employee who was inside the building.[25]

In connection with his investigation, Detective Shatley conducted several interviews.[26]  One of the people whom Detective Shatley interviewed was Natalie Wamba, Claimant's girlfriend.[27]  Wamba told Detective Shatley that Claimant had been complaining about two co-workers:  Steven Beachum and Eugene Lockhart.[28]  But she could not identify any non-work-related reason for the assault.[29]  Although Wamba mentioned that Claimant had played the penny slots at Delaware Park, Detective Shatley's investigation did not reveal a gambling issue that could have led to the assault.[30]  Detective Shatley also interviewed Michael Smulski, the branch

---

[21] *Id.* at 4.
[22] *Id.*
[23] *Id.* at 4–5.
[24] *Id.* at 4.
[25] *Id.* at 3.
[26] Opening Brief, Exhibit B, at 23:11–14 (Trans. ID. 66202604).
[27] Board Decision, at 4 (Trans. ID. 66202604).
[28] *See id.*
[29] *Id.*
[30] *Id.*

manager at Alside.[31]  Smulski confirmed that Claimant had been involved in several arguments at work.[32]  Although Smulski did not believe that Beachum or Lockhart had orchestrated the assault, he believed that Lockhart had the means and connections to do so.[33]  Detective Shatley interviewed Bill Wilson, a co-worker of Claimant's.[34]  Wilson said that there had been work-related tension at Alside before the assault, but that tension disappeared after Claimant left.[35]  He thought that the assault was an "inside job" because Claimant did not get along with many of Alside's employees.[36]  Wilson believed that Lockhart was the person who was most likely to organize an assault against another, but Wilson lacked direct knowledge that Lockhart had done so in this instance.[37]  Lastly, Detective Shatley interviewed Secdrick Pyatt, another co-worker of Claimant's.[38]  Pyatt also believed that the assault was an inside job, but he believed that Lockhart had arranged it.[39]

In addition to contributing the above information, Detective Shatley testified that no one had direct evidence tying Lockhart to the assault.[40] Detective Shatley also explained that he did not find enough evidence to prove beyond a reasonable

---

[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.*

doubt that Lockhart was behind the assault, so Lockhart was not arrested.[41] Still, Detective Shatley believed that there was enough evidence to conclude that, more likely than not, Lockhart had conspired to assault Claimant.[42] To Detective Shatley, the assault was more than a random event; he thought that Claimant had been targeted, noting that the assailants knew where Claimant parked and likely knew that there were no cameras monitoring that area.[43]

Smulski testified about the relationship between Claimant and Lockhart.[44] Smulski explained that Lockhart was Claimant's direct supervisor and that the two of them had been involved in numerous altercations before the assault.[45] Smulski recalled an episode that had occurred a few weeks before the assault in which Claimant stood up for himself in a work-related confrontation with Lockhart.[46] The confrontation was merely verbal, not physical, and Lockhart later told Smulski that he did not think it was a big deal.[47]

Pyatt confirmed that Lockhart was generally a confrontational person.[48] As noted above, Pyatt told Detective Shatley that if the assault were an inside job,

---

[41] *See id.*
[42] *Id.*
[43] *Id.*
[44] *Id.* at 6.
[45] *Id.* at 6–7.
[46] *Id.* at 7.
[47] *Id.*
[48] *Id.* at 9.

7

Lockhart would have likely been behind it.[49] Pyatt also testified that he believed that the assault was supposed to send a message.[50] He pointed out that the assault occurred at an early hour, where Claimant was known to park, and where there were no cameras to capture the incident.[51] Pyatt believed that only an Alside employee could have put all of this together.[52]

Natalie Wamba testified that she believed that the assault was related to problems at work, not problems in Claimant's personal life.[53] She explained that Claimant led a mellow life outside of work, never getting involved in violence or other conflicts.[54] By contrast, Wamba knew that Claimant had a conflict-laden work relationship with Lockhart.[55]

The only other testifying witness was Claimant himself. He estimated that he had had fifteen to twenty work-related confrontations with Lockhart in less than two years at Alside.[56] In describing the confrontation that shortly preceded the assault, Claimant explained that he and Lockhart stood face-to-face with each other, neither willing to back down.[57] After that incident, Claimant did not see much of Lockhart.[58]

---

[49] *Id.*
[50] *Id.*
[51] *Id.*
[52] *Id.*
[53] *Id.* at 10.
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.* at 11.
[58] *Id.*

Claimant believed that the incident motivated Lockhart to organize the assault against him.[59] Consistent with Pyatt's testimony, Claimant explained that the circumstances of the assault were such that the assault must have been planned by someone with inside knowledge.[60] In Claimant's mind, that someone was Lockhart, who was aware of Claimant's habits.[61] Claimant also recalled that Lockhart had once talked about sending people to someone's house for failing to pay Lockhart for a side job that he had done.[62] Since the assault, Claimant has not returned to Alside.[63]

## C. The Board's Decision

The issue before the Board was whether the injuries that Claimant suffered "arose out of and in the course of his employment with Alside Supply Center."[64] The Board noted that "arising out of" and "in the course of" are independent requirements, both of which must be satisfied for a claimant to be entitled to compensation.[65] In the case before it, only one requirement was in dispute: whether the injuries arose out of Claimant's employment with Alside.[66] The Board explained that in cases involving a physical attack, the question is whether the attack itself

---

[59] *Id.* at 12.
[60] *Id.*
[61] *Id.*
[62] *Id.*
[63] *Id.* at 13.
[64] *Id.* (citing *Histed v. E. I. Du Pont de Nemours & Co.*, 621 A.2d 340, 343 (Del. 1993)).
[65] *See id.* at 14 (citing *Stevens v. State*, 802 A.2d 939, 945 (Del. Super. Ct. 2002)).
[66] *Id.* ("In the present case, there is no apparent dispute that Claimant was 'in the course of employment' at the time of the assault."); *Id.* at 15 ("Where the parties disagree is whether the assault on Claimant can be said to have arisen out of his employment.").

arose out of employment.[67]  The Board identified three fact patterns that guide this determination:  (1) personally motived assaults, (2) employment-related assaults, and (3) neutral assaults.[68]

The Board noted that injuries resulting from personally motivated attacks are generally not compensable.[69]  In one such case, a manager's wife attacked an employee because she "suspected an affair between the employee and the manager."[70] In another case, assailants attacked a claimant after the claimant had "accidentally bumped into them in a food court in the mall where she worked."[71] The Board contrasted personally motivated attacks with employment-related assaults, which result in compensable injuries.[72]  The Board pointed to a case in which "another employee stabbed the claimant as a result of antagonism connected to work"; that antagonism "arose from a series of negative interactions in the workplace" rather than from interactions "unconnected to work."[73]

As an example of a compensable neutral assault, the Board cited the Court's decision in *Rose v. Cadillac Fairview Shopping Center Properties, Inc.*, which involved an employee who "was abducted from the parking lot adjacent to her

---

[67] *See id.* at 15–16.
[68] *See id.*
[69] *Id.* at 16.
[70] *Id.* (citing *Brogan v. Value City Furniture*, 2002 WL 499721 (Del. Super. Ct. Mar. 27, 2002)).
[71] *Id.* (citing *Lauria v. M.A.C.*, 2006 WL 1688118 (Del. Super. Ct. June 20, 2006)).
[72] *Id.*
[73] *Id.* citing *James v. Diamond State Warehouse and Distribution*, No. 1377939, (Del. I.A.B. Sept. 25, 2013)).

workplace, as she arrived early for her scheduled work shift, and was raped by an unknown assailant."[74] According to the Board, the Court "found a reasonable relation between the attack and the claimant's employment where claimant was required to arrive early for work and park in a certain area of the parking lot, and the conditions of her employment therefore increased the likelihood of an attack of this nature."[75] The assault was "neutral," the Board explained, because it was committed by "an unknown assailant who assaulted claimant for no personal reason."[76]

Applying the above framework to the facts before it, the Board found no evidence to suggest that the assault on Claimant was personally motivated.[77] More significantly, the Board stated that it was "reluctant to find that . . . Lockhart likely arranged for the attack on Claimant."[78] The Board ran through the evidence presented about the relationship between Claimant and Lockhart, and the Board reiterated Detective Shatley's conclusion that, more likely than not, Lockhart had arranged the assault.[79] Yet the Board was swayed by "the lack of direct evidence of

---

[74] *Id.* (citing *Rose v. Cadillac Fairview Shopping Ctr. Properties*, 668 A.2d 782 (Del. Super. Ct. 1995)).

[75] *Id.* (citing *Rose v. Cadillac Fairview Shopping Ctr. Properties*, 668 A.2d 782, 790 (Del. Super. Ct. 1995)).

[76] *Id.* at 17 (citing *Rose v. Cadillac Fairview Shopping Ctr. Properties*, 668 A.2d 782, 790 (Del. Super. Ct. 1995)).

[77] *See id.* at 19–20.

[78] *Id.* at 18.

[79] *Id.*

11

Lockhart's involvement in the attack and the absence of any testimony from Lockhart at the hearing."[80]

Nonetheless, the Board concluded that Claimant's injuries arose out of his employment with Alside—a conclusion that the Board drew for two independently adequate reasons. First, the Board determined that "credible evidence exist[ed] of work-related tension that could have led to Claimant['s] being a target for the attack."[81] Second, the Board found that "[t]he conditions of employment at Alside increased the likelihood of an attack by the unknown assailants as Claimant arrived for work."[82]

The Board appeared to base its "work-related tension" theory on the testimony describing the assault as an inside job.[83] In support, the Board pointed to Bill Wilson's statement to Detective Shatley that he thought that the assault was an inside job because people had trouble with Claimant.[84] The Board also noted that "Claimant admitted that there was some tension between him and another employee at Alside."[85] If the assault were organized by an insider other than Lockhart, the

---

[80] *Id.*
[81] *Id.* at 20.
[82] *Id.*
[83] *See id.* at 19.
[84] *Id.*
[85] *Id.*

12

Board reasoned, that "would still provide the necessary nexus between the attack and employment for Claimant's injuries to be compensable."[86]

After comparing Claimant's case to *Rose*, the Board found that the conditions of employment at Alside increased the likelihood of the assault.[87] Specifically, the Board noted that Claimant's case was "similar to *Rose* in that the conditions of Claimant's employment increased the likelihood of an attack of this nature due to the early hour of Claimant's arrival at work, the relative isolation of the building in an industrial park, and the absence of any security camera to deter crime in the parking lot."[88] The Board also found that in both Claimant's case and in *Rose*, the assailants were unknown.[89] Yet the Board acknowledged that the two cases were not identical.[90] As Detective Shatley explained, the circumstances surrounding Claimant's assault suggested that Claimant had been targeted by the assailants; by contrast, the assault in *Rose* was "purely random or 'neutral' in motivation."[91]

### III. STANDARD OF REVIEW

"The review of an Industrial Accident Board's decision is limited to an examination of the record for errors of law and a determination of whether substantial evidence exists to support the Board's findings of fact and conclusions

---

[86] *Id.*
[87] *Id.*
[88] *Id.*
[89] *Id.*
[90] *Id.*
[91] *Id.*

of law."[92]  "Substantial evidence" is less than a preponderance of the evidence but more than a "mere scintilla."[93]  Specifically, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[94] The Court may not "weigh the evidence, determine questions of credibility, or make its own factual findings."[95]  The Court reviews questions of law *de novo*.[96]

## IV.  DISCUSSION

### A.    The Board's conclusion that work-related tension could have led to Claimant's assault is supported by substantial evidence

The theory of work-related tension that the Board endorsed was that "the attack was an 'inside job' arranged by an unknown person at Alside."[97]  The Board's endorsement of this theory is significant for two reasons.  First, it means that the Board believed that there was substantial evidence to support the conclusion that the assault was an inside job.  Second, it means that the Board did not believe that there

---

[92] *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019) (internal quotations omitted) (quoting *Roos Foods v. Guardado*, 152 A.3d 114, 118 (Del. 2016)).

[93] *State v. Dalton*, 878 A.2d 451, 454 (Del. 2005) (citation omitted).

[94] *Washington v. Del. Transit Corp.*, 226 A.3d 202, 210 (Del. 2020) (internal quotation marks omitted) (quoting *Powell v. OTAC, Inc.*, 2019 WL 6521980, at *4 (Del. Dec. 4, 2019)).

[95] *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019) (internal quotation marks omitted) (quoting *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009)).

[96] *Dep't of Transp. v. Pearson*, 2020 WL 2520632, at *3 (Del. Super. Ct. May 15, 2020) (citing *Avallone v. Dep't of Health & Soc. Servs.*, 14 A.3d 566, 570 (Del. 2011)).

[97] Board Decision, at 19 (Trans. ID. 66202604).  The Board initially framed this theory as a "possibility," but the surrounding text makes clear that the Board adopted the theory.  For example, (1) the Board had just rejected Lockhart's involvement; (2) the Board went on to cite evidence supporting the "inside job" theory; and (3) the Board stated that "[i]f the attack [were] an 'inside job' by *someone other than Eugene Lockhart*, this would still provide the necessary nexus between the attack and employment for Claimant's injuries to be compensable . . . ." *Id.* at 18–19.

was substantial evidence to pin the inside job on any particular Alside employee—even Lockhart.[98]

In support of its conclusion that the assault was an inside job arranged by an unknown person, the Board pointed to three pieces of evidence: (1) "Bill Wilson told Detective Shatley that he thought the assault was an 'inside job' because people did not get along with Claimant," (2) "Claimant admitted that there was some tension between him and another employee at Alside," and (3) "Mike Smulski described Alside as a rough place to work, suggesting an environment where tension was common."[99] Additional evidence in the record supports the Board's conclusion. For example, Pyatt testified that only an insider would know where Claimant regularly parked, when Claimant would arrive, and that there were no security cameras on the left side of the building.[100]

Alside correctly points out that all of this evidence is circumstantial; there is no direct evidence to show the existence of an inside job or to identify the person

---

[98] *Id.* at 18 (emphasis added) ("Given this lack of direct evidence of Lockhart's involvement in the attack and the absence of any testimony from Lockhart at the hearing, *the Board is reluctant to find that Eugene Lockhart likely arranged for the attack on Claimant*."); *see id.* at 19 (emphasis added) ("If the attack [were] an 'inside job' by *someone other than Lockhart*, this would still provide the necessary nexus between the attack and employment for Claimant's injuries to be compensable."). The Court need only ensure that "substantial evidence exists to support the Board's findings of fact and conclusions of law." *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019) (internal quotations omitted) (quoting *Roos Foods v. Guardado*, 152 A.3d 114, 118 (Del. 2016)). Because the Board did not find or conclude that Lockhart was behind the assault, the Court need not address Alside's argument that "[a]ny testimony suggesting that Lockhart orchestrated the physical attack on Claimant is purely speculative." Reply Brief, at 5 (Trans. ID. 66285895).

[99] Board Decision, at 19 (Trans. ID. 66202604).

[100] *Id.* at 9.

15

behind it.[101]   But there is more than a "mere scintilla of evidence" to support a reasonable inference that *someone* on the inside arranged the assault, which provides "the necessary nexus between the attack and employment for Claimant's injuries to be compensable."[102]   Accordingly, the Court finds that the Board's conclusion that work-related tension could have led to Claimant's assault is supported by substantial evidence.

>    **B.**     **The Board's conclusion that the conditions of employment at Alside increased the likelihood of Claimant's assault is supported by substantial evidence**

As for the second issue in this appeal, there is no dispute that *Rose* is the proper starting point.  Indeed, Alside does not "deny[] the similarities to *Rose* in that the conditions of Claimant's employment increased the likelihood of an attack of this nature due to the early hour of Claimant's arrival at work, the relative isolation of the building in an industrial park, and the absence of any security cameras to deter crime in the parking lot."[103]   Alside argues, however, that all of this is irrelevant unless the assault was neutral.[104]   According to Alside, the Board could not have found that the assault was neutral because it acknowledged that Claimant had apparently been targeted.[105]

---

[101] Reply Brief, at 3–4 (Trans. ID. 66285895).
[102] *State v. Dalton*, 878 A.2d 451, 454 (Del. 2005) (citation omitted); Board Decision, at 19 (Trans. ID. 66202604).
[103] Reply Brief, at 6 (Trans. ID. 66285895).
[104] *Id.* at 7.
[105] Opening Brief, at 16–17 (Trans. ID. 66202604); Reply Brief, at 6–7 Trans. ID. 66285895).

Thus, Alside's understanding of *Rose* is that a claimant can recover only if (1) the conditions of employment make the assault more likely and (2) the assault is neutral in motivation.[106] But the Court has never read *Rose* to require both elements. For example, in *Delaware Transit Corporation v. Hamilton*, the Court explained that the Court in *Rose* "found that the attack arose out of employment because the conditions of employment created an increased likelihood of attack."[107] The Court in *Hamilton* did not mention the neutral nature of the attack. In *Lauria v. M.A.C.*, the Court noted that because the employee in *Rose* "was assaulted 'for no personal reason to her,' [the assault] was 'neutral' and not 'personal.' Therefore, it arose out of the employment."[108] The Court in *Lauria* did not mention the conditions of employment. Thus, the Court has read *Rose* to require one element or the other, but never both.

Regardless, both elements are present here. First, as noted above, Alside concedes that "the conditions of Claimant's employment increased the likelihood of

---

[106] *See* Opening Brief at 17 (quoting Board Decision, at 20 (Trans. ID. 66202604)) ("The conclusion by the Board that '[t]he conditions of employment at Alside increased the likelihood of an attack by the unknown assailants as Claimant arrived for work' is irrelevant and in error as the substantial evidence shows that this simply was not a purely random or "neutral" attack.").
[107] *Del. Transit Corp. v. Hamilton*, 2001 WL 1448239, at *2 (Del. Super. Ct. Oct. 31, 2001).
[108] *Lauria v. M.A.C.*, 2006 WL 1688118, at *3 (Del. Super. Ct. June 20, 2006) (ellipses omitted) (quoting *Rose v. Cadillac Fairview Shopping Ctr. Properties*, 668 A.2d 782, 785, 790 (Del. Super. Ct. 1995)).

an attack" for a number of reasons.[109]   Second, following *Rose*, the assault on

Claimant was neutral in motivation.  The Court in *Rose* wrote:

> There is no dispute of fact that the attack on the plaintiff was by an unknown assailant, who assaulted her [the employee] for no reason personal to her. She did not know this perpetrator prior to the attack. Thus, the attack was of the "neutral" category that brings it within the realm of worker's compensation . . . .[110]

So the *Rose* analysis is twofold:  (1) whether the assailant is unknown and (2)

whether the employee was attacked for no reason personal to the employee.[111]  Here,

as Alside notes, the "substantial evidence shows . . . that the identities of Claimant's

attackers remain unknown."[112]   And, as discussed above, there is no evidence to

suggest that Claimant was assaulted for a reason personal to him (e.g., a gambling

debt).  Thus, under *Rose* the assault on Claimant was neutral in motivation.

The Board correctly identified *Rose*'s twofold definition of a neutral

assault.[113]  Yet the Board went on to comment that "this case differs from *Rose* in

that evidence suggests the attackers in the current case specifically targeted Claimant

---

[109] Reply Brief, at 6 (Trans. ID. 66285895).

[110] *Rose v. Cadillac Fairview Shopping Ctr. Properties*, 668 A.2d 782, 790 (Del. Super. Ct. 1995).

[111] *See Lauria v. M.A.C.*, 2006 WL 1688118, at *3 (Del. Super. Ct. June 20, 2006) (quoting *Rose*, 668 A.2d at 785, 790) ("In *Rose v. Cadillac Fairview Shopping Center Properties*, . . . [t]he court found because the employee was assaulted '. . . for no personal reason to her,' it was 'neutral' and not 'personal.' Therefore, it arose out of the employment.").

[112] Opening Brief, at 18 (Trans. ID. 66202604).

[113] Board Decision, at 7 (citing *Rose*, 668 A.2d at 790) ("The Court [in *Rose*] noted that the assault was by an unknown assailant who assaulted claimant for no personal reason, thereby placing the attack in the 'neutral' category.") (Trans. ID. 66202604).

rather than the attack being purely random or 'neutral' in motivation."[114]  Despite this apparent inconsistency, the Board ultimately found in favor of Claimant on the ground that the conditions of his employment with Alside made the assault more likely.  The Board may not have thought that the compensability of Claimant's injuries turned on whether the assault was neutral.  As noted above, this is how the Court in *Hamilton* read *Rose*.  Regardless, Alside does not dispute the Board's actual conclusion in this case—that the conditions of employment at Alside increased the likelihood of Claimant's assault.  The Court finds that this conclusion is supported by substantial evidence.

## V.  CONCLUSION

The Board concluded that Claimant's injuries arose out of employment because work-related tension could have caused the assault and because the conditions of employment at Alside made the assault more likely.  Both conclusions are supported by substantial evidence.  Accordingly, the Board's Decision and Order is **AFFIRMED**.

**IT IS SO ORDERED.**

*Jan R. Jurden*

_____
Jan R. Jurden, President Judge

cc:  Prothonotary

---

[114] *Id.*

19