MEDICAL ASSOCIATES CLINIC, P.C.
and Aetna Casualty & Surety
Company, Appellants,

v.

FIRST NATIONAL BANK OF DUBUQUE
and Barbara L. Martin, Co–Executors
of the Estate of Miles H. Martin, Jr.,
Deceased, and Barbara L. Martin, Indi-
vidually and as Surviving Spouse of
Miles H. Martin, Jr., Appellees.

No. 88–641.

Supreme Court of Iowa.

May 17, 1989.

der that rule for a supplemental order on tender

Larry L. Shepler, Davenport, for appel-
lants.

Joseph P. Zwack, Dubuque, for appel-
lees.

Considered by McGIVERIN, C.J., and
HARRIS, LARSON, SNELL and
ANDREASEN, JJ.

SNELL, Justice.

This appeal is brought by an employer,
Medical Associates Clinic, P.C., and its in-
surer, Aetna Casualty & Surety Company,
from the decision of the district court to
affirm the industrial commissioner's award
of workers' compensation benefits to the
estate and surviving spouse of Dr. Miles H.
Martin, Jr. We affirm.

On Monday, March 1, 1982, Martin was
killed in an automobile accident on his way
from home to work at Mercy Hospital in
Dubuque, Iowa. At the time of his death,
Martin was employed as a cardiovascular
thoracic surgeon by Medical Associates,
which was officed less than 100 feet from
Mercy. Although Martin did the majority
of his work at Mercy and Medical Associ-
ates, he also saw patients at Finley Hospi-
tal and at Xavier Hospital, which has since
closed. These hospitals were, respectively,
one mile and six miles from Mercy and
Medical Associates.

Martin's employment contract with Medi-
cal Associates appeared to acknowledge
and distribution.

the necessity of travel between these work sites by providing in part:

> Employee shall pay in the course of his employment certain other necessary expenses as a participating physician for which the Employee will be required personally to pay and for which Employer shall be under no obligation to reimburse or otherwise compensate the Employee including, but not limited to, the following:

> *Automobile and transportation expenses;* dues in medical associations and societies; home telephone bills; expenses of membership in civic and fraternal organizations, expenses of business meetings and conventions attended by Employee on behalf of the Employer, education expenses incurred by Employee for the purpose of maintaining or improving the Employee's professional skills; and all other items of reasonable and necessary professional expense incurred by Employee in the interests of the medical practice of Employer in which Employee has been employed as a practicing physician. [Emphasis added.]

Martin's duties as an employee of Medical Associates also included being on call for emergencies every other day and every other weekend. The weekend shifts generally extended from Friday evening until Monday morning. At the time of the accident, Martin was still on call for the weekend.

Martin had three surgeries scheduled at Mercy on March 1. The appointment for the first surgery had been made on Sunday, in response to an emergency call. The other two surgeries had been scheduled farther in advance.

■ Based on the circumstances of Martin's employment with Medical Associates, including the terms of the employment contract, the commissioner concluded Martin's death arose out of and in the course of his employment because bringing his automobile to work was a requirement of that employment. Upon judicial review, the district court upheld this conclusion.

We have previously noted that

> [a]n injury occurs in the course of the employment when it is within the period of employment at a place where the employee reasonably may be in performing his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. An injury in the course of employment embraces all injuries received while employed in furthering the employer's business and injuries received on the employer's premises, provided that the employee's presence must ordinarily be required at the place of the injury, or, if not so required, employee's departure from the usual place of employment must not amount to an abandonment of employment or be an act wholly foreign to his usual work.

*Farmers Elevator Co. v. Manning,* 286 N.W.2d 174, 177 (Iowa 1979) (quoting *Bushing v. Iowa Railway & Light Co.,* 208 Iowa 1010, 1018, 226 N.W. 719, 723 (1929)). With regard to "in the course of," the general rule is that, absent special circumstances, an employee is not entitled to compensation for injuries occurring off of the employer's premises on the way to and from work. *Frost v. S.S. Kresge,* 299 N.W. 2d 646, 648 (Iowa 1980). This is known as the "going and coming" rule.

■ However, there are several recognized exceptions to this rule. *See Frost,* 299 N.W.2d at 648–49. Additionally, under a separate rule which acts as an exception to the "going and coming" rule, an employee's trip to and from work is considered within the course of employment if the employee is required, as a part of his employment, to provide a vehicle for his use during the working day. *See Davis v. Bjorenson,* 229 Iowa 7, 11, 293 N.W. 829, 830 (1940); 1 A. Larson, *The Law of Workmen's Compensation* § 17.50 at 4–239 (1985). As stated by Professor Larson:

> The theory behind this rule is in part related to that of the employer-conveyance cases: the obligations for the job reach out beyond the premises, make the vehicle a mandatory part of the employment environment, and compel the employee to submit to the hazards associated with private motor travel, which otherwise he would have the option of avoid-

ing. But in addition there is at work the factor of making the journey part of the job, since it is a service to the employer to convey to the premises a major piece of equipment devoted to the employer's purposes. Since these are the reasons supporting the rule, care must be exercised not to confuse these cases with the more common cases ... in which attention is focused exclusively on the journey itself—in particular, on the question: was the employee paid for the time or expenses of the journey itself? *In the present category, it is immaterial whether the employee is compensated for the time or expenses of the journey, since work-connection is independently established by the fact of conveying the vehicle to the operating premises.*

1 A. Larson, § 17.50 at 4–239–44 (emphasis added).

■ This rule was applied to allow compensation in *Davis,* the case principally relied upon by the commissioner and the district court. In *Davis,* the claimant was required under an oral employment agreement to furnish an automobile, which was to be kept at his employer's place of business during ordinary working hours, for use in the business. *Davis,* 229 Iowa at 9, 293 N.W. at 829. At night the car was kept at claimant's home for him to use in making emergency service calls outside regular working hours. This court found that "the car was an instrumentality of the business at all hours of the day and was subject to that use at night." *Id.* at 11, 293 N.W. at 830. It was claimant's duty to take the car to work for its use in the business and "in so doing he was performing for his employer a substantial service required by his employment at the place and in the manner so required." *Id.* We therefore concluded claimant's injuries in an automobile accident on the way to work arose out of and in the course of his employment.

Medical Associates contends *Davis* is distinguishable from this case in a number of ways. Medical Associates notes that Davis was required by contract to provide the vehicle and that it was used in the business

by all of the employees to make service calls. Further, the employer in *Davis* furnished the gas and oil for the vehicle.

We believe Medical Associates reads *Davis* too narrowly. It was not significant that the employer paid for part of the vehicle's maintenance or that employees other than claimant used the vehicle. What was significant was that claimant was required to bring the vehicle to work for its use in the business to make service calls. As a result, "claimant had no selection of his mode of travel to work." *Davis,* 229 Iowa at 11, 293 N.W. at 830.

In this case, substantial evidence in the record supports the commissioner's finding that Martin was similarly required to bring his car to work. Martin had no fixed work hours or work situs; instead, his work as a thoracic surgeon necessitated that he make frequent trips between the Medical Associates office and several area hospitals. Moreover, the employment requirement that Martin often be on call also made it incumbent upon him to have ready transportation available.

There can be no doubt Medical Associates obtained a substantial benefit from Martin's mobility. And Martin's employment contract suggests that this benefit was expected, by its listing of automobile and transportation expenses with "all other items of reasonable and necessary professional expense incurred by Employee in the interest of the medical practice of Employer."

In short, the facts demonstrate Martin was required to bring his car to work for its use in furtherance of Medical Associates' practice. We therefore conclude Martin's death in an automobile accident on the way to work arose out of and in the course of his employment.

AFFIRMED.