# IN THE COURT OF APPEALS OF IOWA

No. 18-2126
Filed July 24, 2019

CARROLL AREA NURSING SERVICES and
THE CINCINNATI INSURANCE COMPANIES,
    Plaintiffs-Appellants,

vs.

AMY MALLOY,
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Sarah Crane, Judge.

An employer appeals the district court decision affirming the award of healing period benefits by the workers' compensation commissioner. **AFFIRMED.**

Matthew R. Phillips, Des Moines, for appellants.

Jacob J. Peters of Peters Law Firm, P.C., Council Bluffs, for appellee.

Considered by Mullins, P.J., Bower, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**SCOTT, Senior Judge.**

An employer appeals the district court decision affirming the award of healing period benefits by the workers' compensation commissioner. We find there is substantial evidence in the record to support a finding the employee came within the personal-vehicle exception to the coming-and-going rule and was not engaged in a deviation from the course of employment at the time of the accident. We affirm the district court and the workers' compensation commissioner.

## I.    Background Facts & Proceedings

Amy Malloy is a registered nurse employed by Carroll Area Nursing Services (CANS).[1]  Malloy lived in Walnut, Iowa.  As part of her employment, Malloy traveled to patients' homes in the surrounding area to provide medical care. She drove her own vehicle to the patients' homes.  CANS provided Malloy with a GPS unit, which could track her location.  Malloy was reimbursed by CANS for "miles above what you would normally have to drive to your office."

On October 14, 2014, Malloy had arranged to have the morning off to attend a medical appointment in Omaha.  She drove her vehicle to the home of her mother, Deborah, which was two miles north of her home, and left her car there.[2] Malloy had medical supplies needed for her work in her vehicle.  Deborah drove Malloy to Omaha in Deborah's car.  On the way back, Malloy received a telephone

---

[1]  We will refer to CANS and its insurance carrier, The Cincinnati Insurance Companies, together as CANS.

[2]   Malloy was driving her son's car instead of her vehicle that day, as Malloy's husband was getting new tires for Malloy's vehicle.  There was evidence the GPS device provided by CANS was placed in the car Malloy was driving for the day.

call from a health care aide about one of her patients, Patient A. Malloy talked to Patient A and told him she would see him that day.

Deborah took Malloy to Malloy's house, where she changed into her work uniform. Deborah then drove Malloy to Deborah's house so Malloy could pick up her car, which contained the medical supplies she needed for her work. Malloy decided to go to Patient A's house first, before her other appointments. As Malloy was traveling in her vehicle in the direction of Patient A's house, she was involved in a head-on collision and sustained serious injuries.

Malloy filed a petition seeking workers' compensation benefits. CANS asserted Malloy was not entitled to benefits because she was not injured while in the course of her employment. At the time of the administrative hearing, held on November 3, 2016, Malloy was still receiving medical treatment and had not returned to work. A deputy workers' compensation commissioner found Malloy came within the personal-vehicle exception to the coming-and-going rule, and her injury arose out of and in the course of her employment with CANS. The deputy also found Malloy had not deviated from the course of her employment at the time of the accident. The deputy determined Malloy was entitled to a running award of healing period benefits. The deputy's decision was affirmed by the workers' compensation commissioner.

CANS filed a petition for judicial review. The district court found there was substantial evidence in the record to support the commissioner's finding that Malloy came within the personal-vehicle exception to the coming-and-going rule. The court found Malloy's trip to Patient A's house was within the course of her employment because she was required by CANS to provide a vehicle to travel to

patients' homes to provide nursing services. The court also found there was substantial evidence to show Malloy was not making a personal deviation at the time of the accident. The court affirmed the commissioner. CANS now appeals.

## II.     Standard of Review

Our review in this administrative action is governed by Iowa Code chapter 17A (2018). We apply the standards of section 17A.19(10) to the commissioner's decision and decide whether the district court correctly applied the law in its judicial review. *Des Moines Area Reg'l Transit Auth. v. Young*, 867 N.W.2d 839, 842 (Iowa 2015). "If we reach the same conclusions as the district court, 'we affirm; otherwise, we reverse.'" *Id.* (citation omitted).

We will reverse the commissioner's factual findings only if they are not supported by substantial evidence when the record is viewed as a whole. *Coffey v. Mid Seven Transp. Co.*, 831 N.W.2d 81, 89 (Iowa 2013). "Evidence is substantial if a reasonable mind would find it adequate to reach the same conclusion." *2800 Corp. v. Fernandez*, 528 N.W.2d 124, 126 (Iowa 1995). "We do not consider the evidence insubstantial merely because we may draw different conclusions from the record." *Coffey*, 831 N .W.2d at 89. "On appeal, our task is not to determine whether the evidence supports a different finding; rather, our task 'is to determine whether substantial evidence . . . supports the findings actually made.'" *Mike Brooks, Inc. v. House*, 843 N.W.2d 885, 889 (Iowa 2014) (citation omitted).

## III.     Course of Employment

Workers' compensation benefits are available to an employee for an injury arising out of and in the course of the employee's employment. Iowa Code

§ 85.3(1) (2014); *Baker v. Bridgestone/Firestone*, 872 N.W.2d 672, 677 (Iowa 2015). In general, "under 'the going and coming' rule, workers' compensation does not cover an injury occurring off of the employer's premises, on the way to or from work." *Bailey v. Batchelder*, 576 N.W.2d 334, 339 (Iowa 1998). Under the rule, "the course of employment commences after the employee reaches the premises when his [or her] actual work begins and is carried on and ceases when he [or she] leaves." *Id.* (quoting *Otto v. Independent Sch. Dist.,* 23 N.W.2d 915, 916 (Iowa 1946)).

One exception is that "an employee's trip to and from work is considered within the course of employment if the employee is required, as a part of his [or her] employment, to provide a vehicle for his [or her] use during the working day." *Med. Assocs. Clinic, P.C. v. First Nat'l Bank*, 440 N.W.2d 374, 375 (Iowa 1989). The reason for the exception is because the obligation to provide a private vehicle "make[s] the vehicle a mandatory part of the employment environment, and compel[s] the employee to submit to the hazards associated with private motor travel, which otherwise he [or she] would have the option of avoiding." *Id.* (quoting 1 A. Larson, *The Law of Workmen's Compensation* § 17.50 at 4–239 (1985)).

In *Davis v. Bjorenson*, 293 N.W. 829, 830–31 (Iowa 1940), the Iowa Supreme Court found an employee was acting within the course of his employment while driving from his home to work when his employment agreement required him to "regularly furnish[ ] his automobile to the employer for use in the business as a service car." The employee worked as a mechanic at the employer's place of business but was also required to drive his personal vehicle to various farms to repair tractors, sometimes outside regular business hours. *Davis*, 293 N.W. at

829. The court determined that, by providing a personal vehicle, the employee "was performing for his employer a substantial service required by his employment at the place and in the manner so required." *Id.* at 830.

In *Medical Associates*, 440 N.W.2d at 374, an employee was killed while driving from his home to his work as a surgeon. As part of his employment, the employee was required to drive his personal vehicle to several hospitals. *Med. Assocs.*, 440 N.W.2d at 374–75. In considering whether the employee was acting within the course of his employment, the Iowa Supreme Court stated, "What was significant was that claimant was required to bring the vehicle to work for its use in the business to make service calls." *Id.* at 376. The court concluded, "[T]he facts demonstrate Martin was required to bring his car to work for its use in furtherance of Medical Associates' practice. We therefore conclude Martin's death in an automobile accident on the way to work arose out of and in the course of his employment." *Id.*

We find there is substantial evidence in the record to support the commissioner's conclusion the present circumstances come within the personal-vehicle exception to the coming-and-going rule. Like the employees in *Davis* and *Medical Associates*, Malloy was required to provide her own vehicle to drive to appointments with her patients. By providing her own vehicle, Malloy provided a substantial service to CANS, and the use of the vehicle was in the furtherance of the employer's interests.

## IV.   Deviation

The employer claims Malloy is not entitled to workers' compensation benefits because she was in the midst of a personal deviation at the time of the

accident. CANS notes Deborah's house was two miles north of Malloy's home, and she had not returned to a point parallel to her own home when the accident occurred. CANS asserts Malloy is not entitled to compensation because she was not on her business route at the time of the accident.

Under the deviation rule,

> Whether decedent was, at the time of his death, acting within the scope of his employment or was on a frolic of his own is a fact question the determination of which, by the commissioner, is binding upon us if supported by sufficient competent evidence or proper inferences drawn therefrom.

*Volk v. Int'l Harvester Co.*, 106 N.W.2d 649, 651 (Iowa 1960). There must be sufficient evidence to show the employee "'abandoned' his employment as required under the deviation rule to remove him from the course of employment." *Quaker Oats Co. v. Ciha*, 552 N.W.2d 143, 153 (Iowa 1996).

The deputy commissioner found, "The undisputed evidence supports Malloy took a longer route to Walnut than she would have taken from her home because her mother lives two miles to the north." The deputy stated, "Malloy had resumed an activity or duty connected with her employment when she began driving toward her patient's home." The deputy concluded, "The record does not support Malloy deviated from the course of employment to such an extent that she abandoned her employment at the time of the accident." The commissioner affirmed this conclusion.

We find there is substantial evidence in the record to support the commissioner's finding Malloy had not abandoned her employment to the extent that she was removed from the course of her employment. *See id.* When Malloy left Deborah's home, she was in her work uniform, with her work supplies in her

car, traveling toward Patient A's home.  At the time of the accident, Malloy was engaged in the work she was required to do—traveling to patients homes to provide medical services.

We affirm the decision of the district court and the workers' compensation commissioner.

**AFFIRMED.**